HARRIS COUNTY FLOOD CONTROL
DISTRICT, Petitioner,

v.

SHELL PIPE LINE CORPORATION,
Respondent.

No. B–8428.

Supreme Court of Texas.

Nov. 7, 1979.

Joe Resweber, County Atty., Edward J. Landry, Asst. County Atty., Houston, for petitioner.

Vinson & Elkins, W. Allyn Hoaglund, Houston, for respondent.

CAMPBELL, Justice.

This is an appeal by Harris County Flood Control District from a judgment of the trial court, affirmed by the Court of Civil Appeals, 578 S.W.2d 495, requiring the District to pay the cost of lowering Shell's pipelines located in a public road. · Shell, pursuant to an agreed injunction, lowered the pipeline so that a flood control drainage ditch could be enlarged but reserved the right to seek payment for its costs. We affirm the judgment of the Court of Civil Appeals.

South Acres Drive, a public road in Harris County, was dedicated for "road and street" purposes on August 4, 1928. The following January, Shell obtained a pipeline easement within the roadway from the fee owner. This easement was subject only to the dedication of South Acres Drive for road and street purposes. Shell maintained pipelines within the roadway without disturbance until 1975. In that year it was required to lower the lines several feet so that the District could increase the width and depth of a flood control drainage ditch.

Shell concedes that it is not entitled to payment if the drainage ditch is for road and street purposes. The District contends (1) That construction of the borrow (bar) ditch for drainage for the immediate and general vicinity of Sims Bayou was a road and street purpose. (2) That the drainage of floodwaters from the immediate and general vicinity of South Acres Drive is a public purpose for which the road was dedicated. (3) The District's right to cross the roadway is dominant to Shell's easement to maintain the pipelines in the bar ditch.

South Acres Drive ·runs east and west. The drainage ditch runs north and south with drainage to the north. Shell's pipelines are parallel to the road in the north side bar ditches.

Mr. Langford, Flood Control Engineer for the District, testified that this project, Sims Bayou, was a part of a county-wide flood control project authorized by bond election in 1969. The plan of the Sims Bayou project was to improve the laterals or channels that run into Sims Bayou with some work on the main channel. This particular channel (C–124) was to be made wider and deeper to increase its capacity to carry floodwaters from some 300–400 acres. Most of this area was south of South Acres Drive. Floodwaters from several subdivisions and streets will be served by the channel.

Mr. Couch, Chief Engineer for the District, testified that no work for this project was done on the bar ditches on South Acres Drive. Outfall pipes were placed from the flow line of the bar ditches into the channel to prevent erosion. The channel is over 6,000 feet in length and serves six or seven subdivisions and some undeveloped land.

The trial court, in a nonjury trial, found that the work performed on the drainage ditch was not a use of South Acres Drive's right-of-way for "road and street" purposes. There is evidence to support the trial court's finding of fact and it is controlling on this Court. *Commercial Union Assurance Company v. Foster*, 379 S.W.2d 320 (Tex.1964).

We hold that enlarging a drainage ditch to accommodate a drainage district is not a public purpose for which the road was dedicated. Easements for road and street purposes have been held to include the laying of sewer, gas and water pipes, *City of San Antonio v. United Gas Pipeline Co.*, 388 S.W.2d 231 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.), telegraph and telephone lines, *City of San Antonio v. Bexar Metropolitan Water District*, 309 S.W.2d 491 (Tex.Civ.App.—San Antonio 1958, writ ref'd). The uses may be generalized as travel, transportation of persons and property and communication. *Hill Farm v. Hill County*, 436 S.W.2d 320 (Tex.1969). We do not agree with the District that the outfall ditch is a mode of transportation in that it carries storm water runoff.

Shell's right to maintain its pipelines within the easement granted is dominant to the right of the District to cross the roadway. Shell's easement was granted eight years before the District was created. and

was subject only to the use of the roadway for road and street purposes.

 The statute creating the District, Article 8280–120 § 9,[1] provides:

The Harris County Flood Control District shall have a right of way .and easement over and across the roads and highways of the State and its subdivisions for the construction and maintenance of the flood control projects of the District, subject, however, to the concurrence of the State Highway Commission whenever such projects require the relocation or bridging of State highways.

This statute gives the District nothing more than a right-of-way and easement over or across South Acres Drive subject to rights of others using the land within the easement. Shell obtained its easement by deed from the fee owner. The easement is an interest in land for which Shell is entitled to compensation if it is taken or damaged. *Magnolia Pipe Line Company v. City of Tyler*, 348 S.W.2d 537 (Tex.Civ.App.—Texarkana 1961, writ ref'd).

■ The District relies on *New Orleans Gas Company v. Drainage Commission of New Orleans*, 197 U.S. 453, 25 S.Ct. 571, 49 L.Ed. 831 (1905) and *City of San Antonio v. San Antonio Street Railway Co.*, 15 Tex. Civ.App. 1, 39 S.W. 136 (1896, writ ref'd) for the proposition that a city can require the relocation of a pipeline at the expense of the owner. These cases are not applicable as they are franchise or contract cases whereby the city had granted to the private corporation the privilege of using the streets. Here, the owner of the fee granted the private corporation an easement by deed and the State an easement by dedication. In *New Orleans Gas Co., supra,* the franchise granted was in recognition that the use of the streets by the gas company was to be in such manner as to least inconvenience the city in its use. In the *San Antonio Railway* case, the rights of the railway were subject to the city's right to locate sewers in the street as provided in the City Charter. In this case Shell is an easement owner and not a mere tenant, licensee, or franchisee.

The judgments of the courts below are affirmed.

---

1. Reference is to Vernon's Texas Revised Civil Statutes Annotated.