**HARLINGEN IRRIGATION DISTRICT CAMERON COUNTY NO. 1,**
**Appellant,**

v.

**CAPROCK COMMUNICATIONS CORP., Appellee.**

No. 13–99–396–CV.

Court of Appeals of Texas, Corpus Christi.

May 31, 2001.

Rehearing Overruled July 19, 2001.

R. Glenn Jarvis, Law Offices of Glenn Jarvis, McAllen, Chris A. Brisack, LLP, McAllen, for Appellant.

Lance Alan Kirby, Robert L. Galligan, Jones, Galligan, Key & Lozano, Weslaco, Ruben R. Pena, Law Offices of Ruben R. Pena, P.C., Harlingen, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and CHAVEZ.[1]

1. Retired Justice Melchor Chavez assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex.Gov.Code Ann. § 74.003 (Vernon 1998).

## OPINION

Opinion by Justice YAÑEZ.

This lawsuit arose from a conflict between the Harlingen Irrigation District Cameron County No.1 (HID) and Caprock Communications Corporation (Caprock) over the placement of fiber-optic cable installed by Caprock over and along property belonging to HID. The trial court issued a judgment in favor of Caprock, from which HID now appeals. We affirm.

## Background

In 1998, Caprock obtained permits from the Texas Department of Transportation (TxDoT) to install an underground fiber-optic cable along several state roads in Cameron County, Texas. The proposed route of the cable traveled along the state road rights-of-way, crossing over property and easements owned by HID.[2] When HID became aware of Caprock's plans, it contacted the contractor installing the fiber-optic cable for Caprock to discuss measures that HID wanted Caprock to institute to minimize the impact the fiber-optic cable would have on HID's operations. HID also wanted to charge Caprock a fee of fifty dollars per linear foot of cable laid on property in which HID held an interest, the fee being for a fifteen-year term. Caprock argued that it had the right, under the Texas Utilities Code,[3] to install a fiber-optic cable along a roadway, even where

that roadway crossed property and easements owned by HID.

After initial discussions, a dispute developed between Caprock and HID concerning the requirements HID sought, with the fee being a major point of contention. On October 14, 1998, Caprock filed an application for a temporary restraining order, temporary injunction, and injunction, to prevent HID from interfering with Caprock's access to the roadway. The court issued a temporary restraining order. On October 30, 1998, Caprock amended its petition to add a claim for declaratory relief, pursuant to the Uniform Declaratory Judgments Act.[4] HID filed its original answer on November 3, 1998. On November 24, 1998, following a hearing, the trial court issued a temporary injunction against HID.

A trial on the merits of Caprock's petition was held on February 1, 1999, before the bench. Following the trial, the court issued a judgment for Caprock, holding that Caprock is a telephone corporation and, under section 181.082 of the utilities code, Caprock has the right to install, operate, and maintain fiber optic cable along, on, or across public roads, public streets, or public waters that cross HID's pipelines, canals, irrigation ditches, or lands.[5] The court also held that HID was not allowed to impose a fee on Caprock.

HID challenges the trial court's judgment with seven issues.

---

2. In several places the fiber-optic cable intersected HID property perpendicularly, and was laid below existing HID facilities; the cable also parallels an HID canal for some distance. In its appeal, HID designates as "parcels" those places where Caprock's cable is installed on property in which HID has an interest, either in fee or as owner of an easement. Fifty-one separate parcels were identified at trial. On some parcels, Caprock's cable intersects HID facilities, on others the cable parallels an HID structure.

3. Tex.Util.Code Ann. § 181.082 (Vernon 1998).

4. Tex Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (Vernon 1997).

5. Caprock has completed its installation, placing three conduits. One conduit contains fiber-optic cable, the remaining two are empty, and will be used for future fiber-optic cables.

## The State's Ownership of the Roadway Easement

■ In its first issue, HID challenges the trial court's ruling as it applies to three parcels of land located along state Farm–to–Market Highway (FM) 507 (parcels one through three). These parcels are three places where the state roadway crosses canals and a drain owned by HID. HID argues that Caprock's cable is laid outside of the forty-foot-wide roadway easement owned by the state, and section 181.082 of the Texas Utilities Code does not permit telephone corporations to lay cable on property which has not been acquired by the state for use as a public street or road. Caprock argues that the roadway easement is actually eighty feet wide.

The original forty-foot road easement was acquired in 1920, prior to HID acquiring the land upon which it has built its canals and drains.[6] At some point the state acquired an additional twenty-foot-wide strip on each side of the existing road easement from land-owners on both sides of the roadway, thus creating an eighty-foot-wide roadway. Caprock's cable is laid outside the forty-foot easement; however, it is within the boundaries of the eighty-foot easement.

HID argues that the FM 507 roadway is only forty feet wide where it crosses HID's drain and canal, although the roadway is eighty-feet wide along the rest of its length. Thus, according to HID, the Caprock fiber-optic line is laid outside of the road easement where the easement crosses the HID property. HID contends that there is no evidence that the state, when it acquired the additional land, also acquired additional land over HID's canals and drain.

## The "No Evidence" Standard of Review

The standards for reviewing the legal and factual sufficiency of the evidence in a trial to the court are the same as those applied when reviewing a trial to a jury. *Humphrey v. Camelot Retirement Cmty.*, 893 S.W.2d 55, 58 (Tex.App.—Corpus Christi 1994, no writ). A "no evidence" standard of review is applied when the party not bearing the burden of proof challenges a finding of fact by arguing that the evidence is legally insufficient to support the finding. *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied)(citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983)). If any evidence of probative value supports the finding, we must uphold the trier of fact's finding. *Id.* When reviewing a legal sufficiency challenge, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting*, 964 S.W.2d 276, 286 (Tex.1998); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 853 (Tex.App.—Corpus Christi 1999, pet. denied).

In the case now before this Court, the trial court found that Caprock placed its cable in accordance with permits from TxDoT, which allowed Caprock to place its lines within the state's road rights-of-way. Essentially, the trial court found that the lines laid by Caprock, including those installed over parcels one through three, were within the state's road rights-of-way, which would only be correct if the state's

---

6. The property for the canals was conveyed to HID's predecessor in interest, Cameron County Water Improvement District Number One, in a deed filed on December 21, 1920. The plat setting aside the property for the roadway was executed on November 24, 1920, filed on November 29, 1920, and recorded on December 2, 1920. HID does not dispute that it is subject to the original roadway easement.

right-of-way easement was eighty feet wide where it crosses HID's property.

### The Evidence

The deposition of Jack Brown, a civil engineer from Harlingen, Texas who has done engineering work for HID, was admitted in evidence.[7] Brown stated that HID recognized the original forty-foot roadway easement but did not recognize the additional twenty feet added on each side of the easement. In his deposition, Brown testified that he could find no deed granting the state the additional property, although it is possible that a joint-use agreement could have been made between HID and the state, without the agreement being documented.[8] Brown also stated that the rights-of-way for farm-to-market roads are typically acquired by Cameron County and then transferred to the state, which constructs and maintains the road.

Brown explained that Cameron County had occasionally needed to acquire rights-of-way over an irrigation district's property. On those occasions, the County would generally arrange to bear the cost of any expense caused by the roadway; however the County would not pay HID "in cash" for the crossing. The agreements that allowed for the County to acquire the road right-of-way would not be recorded in the deed records, but rather would be contained in the minutes of the meetings of the county commissioner's court and HID's board. Brown stated that there was a public road for the entire length of the route of Caprock's fiber optic cable. Brown testified that TxDoT maps show FM 507 as having a right-of-way of eighty

feet over parcels one, two, and three. Attached to Brown's deposition are deeds and maps, also admitted in evidence without objection, indicating that, where the roadway was bordered by private property, Cameron County acquired an easement to the extra twenty-foot strip from the private land owners in 1950. There is no document in the record of the conveyance of an easement from HID for the additional twenty feet.

The deposition of Arnold Cortez, TxDoT's area engineer, was also admitted in evidence. Cortez stated in his deposition that TxDoT's map for FM 507 shows the right-of-way as being eighty feet wide. Cortez also stated that Cameron County would have acquired the property to increase the width of the roadway, and the state took control of FM 507 in the late 1940s or early 1950s. The TxDoT maps showing the eighty-foot right-of-way were admitted in evidence. The permits granted to Caprock by TXDOT state that the right-of-way is eighty feet wide. Cortez testified in his deposition, that the state maintains both the road and the right-of-way, mowing, picking up litter, issuing permits for utilities, and making sure all obstructions are kept cleared. Cortez also testified that HID has never challenged the state's use of the property.

Considering the evidence before the trial court in the light most favorable to Caprock as the prevailing party, we find there is some evidence to support the trial court's finding that Caprock's cable is laid within the state's roadway. Brown stated that rights-of-way were often acquired by the county from irrigation districts with

---

7. At the trial on the merits, the parties stipulated that the testimony and exhibits admitted in the November 24, 1998 hearing on the temporary restraining order were admitted as evidence in the trial.

8. According to Brown's deposition, a joint-use agreement is a resolution by HID board providing for the joint use of a piece of property owned by HID, with which HID agrees to share use of the property with a governmental entity.

informal agreements. The state claims an eighty-foot right-of-way, which it has controlled and maintained since the early 1950s. The trial court could have reasonably inferred that the county acquired easements from HID in 1950 to widen the right-of-way, with an informal agreement that was not recorded, and the easements were then conveyed to the state, which has used and maintained the right-of-way from that time. There is sufficient evidence to support the trial court's finding, in regards to parcels one, two, and three, that Caprock's cable is laid along the public road. Issue number one is overruled.

### Attendant Uses of Public Roads

■ HID's second issue involves a length of FM 507 running along the west side of a canal right-of-way. Along this section, FM 507 runs north and south, over a section of canal right-of-way, which also runs north and south. HID owns the canal right-of-way, but granted an easement along the west side of the canal right-of-way to Cameron County for the construction of a roadway.[9] HID argues that the easements were expressly limited to grant usage of the property only for the construction and maintenance of a roadway and this limitation denies the attendant usage of the road easement by utilities. HID argues that this limitation precludes application of Texas Utilities Code section 181.082.[10] HID holds that because the "attendant" uses allowed under section 181.082 could damage or destroy the vital public use, the delivery of water, to which the property is already dedicated, HID can limit the easement to prevent such attendant uses.

The documents granting the road easement involved in this section of FM 507 all contain similar language as to the purpose underlying the grant: two of the documents state that the easement is being granted for "opening, constructing, and maintaining a permanent highway;" the third document uses the phrase "First Class County Road" instead of "permanent highway."

■ A grant of a right-of-way for roadway purposes includes the attendant public purposes of transportation of persons and property, communication, and travel. *Grimes v. Corpus Christi Transmission Co.*, 829 S.W.2d 335, 337 (Tex. App.—Corpus Christi 1992, writ denied). Roadway easements include the use of the subsurface for sewers, pipelines and other methods of transmission and communication that serve the public interest. *Id.*; *Harris County Flood Control Dist. v. Shell*, 591 S.W.2d 798, 799 (Tex.1979); *Hill Farm, Inc. v. Hill County*, 436 S.W.2d 320, 323 (Tex.1969); *see also* TEX.UTIL.CODE ANN. § 181.082 (Vernon 1998) (authorizing the installation of telephone facilities along a public road). By granting a roadway easement, a grantor necessarily grants an easement for those uses which have been recognized as being included as purposes of roads and streets. *Grimes*, 829 S.W.2d at 338; *Harris County Flood Control Dist.*, 591 S.W.2d at 799. The documents granting the easements involved in this issue create easements for roadways, and, thus, allow for the use of the easements for a subsurface telephone line.

HID cites to *City of Fort Worth v. Burnett*, 131 Tex. 190, 114 S.W.2d 220, 223

---

9. TxDoT now holds the easement for the state.

10. The utilities code states:
 A telephone or telegraph corporation may install a facility of the corporation along,

on, or across a public road, a public street, or a public water in a manner that does not inconvenience the public in the use of the road, street, or water.
TEX.UTIL.CODE ANN. § 181.082 (Vernon 1998).

(Tex.1938) and *Houston Lighting and Power Co. v. State*, 925 S.W.2d 312, 314 (Tex.App.—Houston [14th Dist.] 1996, writ denied) for the proposition that when a dedication is made for a defined purpose, the property may only be used for the designated purpose. These cases are not applicable in the case now before this Court.

In *Burnett* and *Houston Lighting*, the courts were dealing with grants to the public for non-roadway uses. In *Burnett*, property was granted to the City of Fort Worth for use as a public park, and the supreme court held that such a grant did not include the construction of a library. *Burnett*, 114 S.W.2d at 223–24. In *Houston Lighting*, the court of appeals held that a power company was entitled to compensation for relocating power facilities on a dedicated public utility easement when the facilities were displaced as a result of highway construction. *Houston Lighting*, 925 S.W.2d at 315. The *Houston Lighting* court refused to accept the state's argument that the dedication of the utility easement was a general dedication to the public, which would allow the use of the easements for roadways without compensation to the utility company which possessed the easement. *Id.* at 314. These cases differ from the one now before this Court because they involve property set aside for a particular use, then being used for purposes inconsistent with the grant. In the instant case, the grants were made for use as a roadway, which use includes the installation of communications facilities. The roadways in the case now before this Court are being used consistently with the grant.

HID also contends that this Court should not apply the holding in *Grimes* in the instant case because the property over which the roadway easement was granted was already the subject of a vital public use. HID argues that the attendant uses that attach to a roadway should not be recognized in the instant case because the attendant uses could interfere with the underlying public usage. Essentially, HID urges this Court to find that the inclusion of attendant purposes should not apply when a road right-of-way crosses property already the subject of a vital public usage. We find no caselaw to support such a holding. Such a holding would create a situation in which every public utility could attempt to limit and control the attendant usages on roadways passing through utility rights-of-way. We are unwilling to rule that an existing public use, even one so important as the provision of water, precludes the construction of attendant uses along a road right-of-way. HID's second issue is overruled.

### HID's Challenges to the Court's Findings of Fact

In its third issue on appeal, HID challenges several of the trial court's findings of fact and conclusions of law. We will address the challenges to the findings of fact first, then address the challenges to the conclusions of law.

Appellate courts uphold a trial court's findings unless the findings are manifestly erroneous and without any evidence to support them, or are so against the great weight and preponderance of the evidence as to be manifestly wrong. *Tidelands Life Ins. Co. v. Franco*, 711 S.W.2d 728, 729 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Simmons v. Compania Financiera Libano, S.A.*, 830 S.W.2d 789, 791 (Tex. App.—Houston [1st Dist.] 1992, writ denied). We review the court's findings of fact by the same standards used to review

the sufficiency of the evidence to support a jury's findings. *Winters v. Arm Refining Co., Inc.,* 830 S.W.2d 737, 739 (Tex.App.— Corpus Christi 1992, writ denied). The judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it, and this Court may not substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Ray v. Farmers' State Bank of Hart,* 576 S.W.2d 607 (Tex.1979); *Humphrey v. Camelot Retirement Comm.,* 893 S.W.2d 55, 58 (Tex.App.—Corpus Christi 1994, no writ).

HID challenges findings of fact numbers nine, thirteen, and twenty-three.

### Finding of Fact Number Nine.

9. CapRock made efforts to ensure that its operations would not interfere with the operations of the District whose pipelines and/or canals perpendicularly crossed the state road rights-of-way.

■ We find sufficient evidence to support this finding. Caprock's right-of-way manager, J.D. Miller, testified that Caprock installed its fiber-optic lines deeper than required by TxDoT. Miller also explained that Caprock used sideways boring when installing cable below HID facilities, and buried the fiber-optic cable at a depth of fifteen feet when placing the cable under HID facilities, all in an effort to avoid interfering with HID's operations. There was also testimony that the fiber-optic line was contained within a conduit, which was intended to protect the fiber-optic line from damage when there is activity above the cable. This evidence is sufficient to support finding of fact number nine.

### Finding of Fact Number Thirteen

13. One of the conditions imposed upon CapRock was for CapRock to place its fiber optic cable 10 feet underneath District facilities. CapRock placed its fiber optic cable at least 15 feet underneath all District facilities using sideways boring in order to avoid any interference with District operations, and this Court finds that CapRock's installation has not interfered or affected the District's operations or facilities. This Court further finds that CapRock's lines will not interfere or affect the District's future operations and/or facilities because of the depth at which they are buried.

■ There is sufficient evidence to support the finding that Caprock installed its lines fifteen feet under HID facilities, where Caprock's line is installed *under* HID facilities. Although there was testimony that Caprock buried its line at a depth of forty-two inches in some areas, those were places where the line ran *parallel* to HID facilities. Testimony by Miller, as well as exhibits from a boring installation, support the finding that the line was buried at a depth of fifteen feet where Caprock's fiber-optic line had to cross under HID facilities. The finding does not state that Caprock buried all cable at fifteen feet, only that Caprock placed its fiber optic cable at least fifteen feet underneath all HID facilities. This finding does not address those areas where the fiber-optic cable parallels HID facilities, rather than running underneath HID facilities.

■ However, we find that the trial court erred in issuing the finding that Caprock's lines will not interfere or affect future operations by HID. Although there is evidence that the depth at which the lines are buried is intended to limit the impact the lines will have on HID's operations, this does not enable a court to determine that a buried cable will not have an effect in the future. Essentially, the trial court erred by issuing a finding of fact as to something for which there can be no evidence; the impact the buried line will

have on HID in the future. Further, the evidence conclusively establishes that the existence of buried cables do have an impact on HID operations. There was testimony about the additional steps taken by HID when working in areas in which fiber-optic cables have been installed. Miller testified that Caprock intended to provide technical drawings of the location of Caprock's line to HID to help avoid any accidents if HID engages in any operations in areas where Caprock has a buried cable. Caprock would not have to provide these drawings if its cable was buried in such a way as to have no impact on HID's operations. The existence of a buried cable will inevitably have an impact on an irrigation district's future operations, when the irrigation district engages in the kind of earth-moving operations inherent in maintaining and constructing canals, pipelines and other structures necessary for moving water. HID introduced numerous photographs of operations in which HID took extra measures to avoid damaging existing utility cables.

Although we find the second part of finding-of-fact number thirteen to be erroneous, this error does not require reversal because we do not find that this error probably caused the rendition of an improper judgment. TEX.R.APP.P. 44.1. Even were we to remove this portion of this finding, the trial court's judgment would still stand.

**Finding of Fact Number Twenty-three**

23. CapRock's installation has not inconvenienced the public in the use of the roads along which it installed its lines through District territory, and CapRock has complied with all requirements and conditions imposed by the Texas Department of Transportation pursuant to the permits issued.

There was no evidence introduced at the trial court that would indicate that Caprock's fiber-optic line affected public usage of the roads. In his deposition, Cortez stated that TxDoT had an inspector examining Caprock's operations to insure that the installation did not affect the public. At trial HID argued that it was a member of the public and had been inconvenienced by Caprock's installation. Even if we assume, *arguendo,* that HID was inconvenienced and is a member of the public, this would not constitute an interference with the use of the road. Any inconvenience pertained to HID's use of its own rights-of-way, and not the roads. The testimony by Miller was that the installation was done to the specifications required by TxDoT, which were designed to prevent any interference with public usage of the road. There is no evidence controverting this testimony. The trial court did not err in issuing finding of fact number twenty-three

### HID's Challenge to the Trial Court's Conclusions of Law

HID challenges conclusion of law numbers three and seven. The trial court's conclusions of law are not binding on this Court, and this Court is free to make its own legal conclusions. *Muller v. Nelson Sherrod & Carter,* 563 S.W.2d 697, 701 (Tex.Civ.App.—Fort Worth 1978, no writ). Conclusions of law are reviewed *de novo* as a question of law and will be upheld if the judgment can be sustained on any legal theory supported by the evidence. *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.,* 981 S.W.2d 483, 485 (Tex. App.—Austin 1998, no pet.). A trial court's conclusions of law may not be challenged for factual sufficiency. *Id.* Conclusions of law will not be reversed unless they are erroneous as a matter of law. *Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 547 (Tex.App.—Austin 1999, pet. denied); *Hofland v. Fireman's Fund*

*Ins. Co.*, 907 S.W.2d 597, 599 (Tex.App.— Corpus Christi 1995, no writ). Incorrect conclusions of law do not require reversal if the controlling findings of fact support a correct legal theory. *Stable Energy*, 999 S.W.2d at 547.

**Conclusion of Law Number Three.**

3. CapRock has an absolute right to lay fiber optic cable along the public roads, public streets, and public waterways including F.M. 507, F.M. 508, F.M. 1479, Loop 499, and U.S. 281, in Cameron County, Texas, regardless of whether the State of Texas owns fee simple title to the road or only owns a roadway easement.

 HID argues that the trial court is granting Caprock an absolute right of usage, with impunity for any damage they may cause in the course of laying its cable. We do not read this conclusion as being a broad grant to Caprock of a right to install fiber-optic cable without consideration of existing uses on the property, but rather as a recognition that Caprock has a right to enter roadways and utilize them as routes along which to install their lines. We do not understand the use of the word "absolute" as conveying a grant of an absolute right of usage, immune from tort liability or the usual regulation of utilities. In the past, courts have used similar "absolute" language to make clear that, under section 181.082, companies providing long distance telephone service may use public roads and streets, and that this right of use may not be denied. *City of Brownwood v. Brown Telegraph and Telephone Co.*, 106 Tex. 114, 157 S.W. 1163, 1165 (1913); *South-*

*western Bell Tel. Co. v. Bigler*, 563 S.W.2d 851, 852–53 (Tex.Civ.App.—San Antonio 1978, no writ). The right to use public roads has never been held to be without limits, in fact it is explicitly limited by the statute. Tex.Util.Code Ann. § 182.081 (Vernon 1998) (installation cannot interfere with the public's use of the road). Municipalities may also regulate the use of their roadways, provided that regulation does not constitute a denial of access. *City of Brownwood*, 106 Tex. 114, 157 S.W. at 1165; *Roaring Springs Town-Site Co. v. Paducah Tel. Co.*, 109 Tex. 452, 212 S.W. 147, 149 (1919). In the conclusion now under consideration, the trial court was simply stating that Caprock has the right to use the roadways, as granted by the utility code. *See* Tex.Util.Code Ann. § 181.082 (Vernon 1998).[11] This conclusion is not a grant of an absolute right of usage.

**Conclusion of Law Number Seven.**

7. CapRock has not inconvenienced the public in the use of the public roads while installing its fiber optic cable.

We do not find this conclusion to be erroneous as a matter of law. As discussed above, under finding of fact number twenty-three, the trial court did not err in finding that Caprock had not inconvenienced the public. Finding number twenty-three supports the trial court's conclusion that the public was not inconvenienced in its use of the roads.

HID concludes its argument in the third issue on appeal by contending that the trial court erred in granting judgment

---

11. We also note that this reading of the conclusion is consistent with the wording of the judgment in the instant case, which stated that Caprock had the *statutory* right to install and operate fiber-optic cable along, on, or across public roads, public streets and public waters. *See Grossnickle v. Grossnickle*, 935

S.W.2d 830, 841 (Tex.App.—Texarkana 1996, writ denied) (when two interpretations are possible, the appellate court should choose the interpretation that harmonizes the judgment with the findings of fact and conclusions of law).

based upon erroneous findings of fact and conclusions of law. Because we have found that the only erroneous finding does not require the reversal of the judgment, we overrule HID's third issue.

### Limitations on Roadway Easements and Public Policy

■ With its fourth issue, HID argues that the deeds conveying the roadway easement to the state for a section of the roadways in question contain limitations which apply to Caprock.[12] The deeds state that HID and the state agree that "all construction or reconstruction of facilities by either the Grantor or Grantee affecting facilities of the other party shall be subject to approval by the other party." HID contends that this language is a limitation on the state's right of entry, and any activity which exceeds the limitation constitutes trespass. HID argues that because it has agreed to this limit, the state is bound by it and cannot grant to Caprock a greater right than the limited right conveyed to the state. Caprock argues that the provision requiring HID's approval of any construction is void as counter to public policy. HID responds by arguing that placing limitations on attendant uses is not contrary to public policy, but rather that public policy supports the limitation of attendant usages to protect existing public uses.

■ We find the deed restriction requiring that HID approve any construction on the roadway easement to be void as against public policy. A person dedicating property to the state may not impose a restriction on that property which is contrary to public policy. *Paducah Tel. Co.,* 212 S.W. at 149. A condition in a dedication which limits the future freedom of action of the authorities to devote roadways to the wants and convenience of the

public is void as against public policy or as inconsistent with the grant. *City of Fort Worth v. Ryan Props.,* 284 S.W.2d 211, 214 (Tex.Civ.App.—Fort Worth 1955, no writ). The rights granted to the public under a public use easement are identical whether the easement is gained by condemnation, dedication, prescription, or deed. *Grimes,* 829 S.W.2d at 337. Thus, a condition on an easement granted by deed, that limits the future freedom of action of the authorities to devote roadways to the wants and convenience of the public is void as against public policy or as inconsistent with the grant.

As discussed above, one of the usages inherent in a public road is communication. *Id.* The restriction included in the deed establishing the roadway easement in the instant case limits the freedom of TxDoT to issue the necessary permits to long-distance telecommunications companies to allow construction of communication facilities along the road easements encumbered with the restriction, and thus, interferes with the state's freedom to devote the roadways to the wants and convenience of the public.

In the case now before this Court, the conflict between the restriction and public policy is illustrated by the restrictions that HID sought to impose upon Caprock. When Caprock approached HID to discuss the installation of the fiber-optic lines, HID presented Caprock with a list of eleven conditions necessary to secure permission to install the fiber-optic lines. The eleventh condition required the payment of a fee to secure use of the property for a fifteen-year period, renewable for an additional fee. Under this requirement, Caprock does not gain the use of the easement, but rather a lease with a time limitation, subject to the imposition of an additional fee to retain the lease.

---

12. HID specifically includes parcels fourteen through forty-six in this issue.

Presumably HID would be able to set a higher fee in fifteen years and require that Caprock pay it or cease using the roadway. Nowhere have courts held that the right of access to roadways enumerated in section 181.082 is subject to a time limit. The requirement that Caprock pay a periodic fee for use of the roadway interferes with Caprock's statutory right to utilize public roadways.

Texas courts have long considered section 181.082 to be an expression of the public policy of encouraging the construction of communication systems. *City of Brownwood,* 106 Tex. 114, 157 S.W. at 1165; *Paducah Tel. Co.,* 109 Tex. 452, 212 S.W. at 149; *Bigler,* 563 S.W.2d at 853 (citing *Paducah Tel. Co.*). The public policy favoring the use of public roads for communications facilities is as relevant today as it was in the early part of the twentieth century. The construction of new housing and new roads requires the construction of new telephone lines. Roads serving the public in areas of growth will inevitably cross stretches of property owned, or held by easement, by a variety of public utilities and entities similar to HID. If each of these utilities is able to impose restrictions on the construction of facilities along public roads, the extension of telephone service to areas of new construction would be greatly hampered. This is contrary to the policy of encouraging access to means of communication, such as telephone service.

■ Furthermore, under the restriction, HID could conceivably require approval before allowing TxDoT to repair damage to the roadway. Should the state wish to add safety devices in the form of guardrails or barricades alongside the road, HID's approval would be required before such construction could take place. Once conveyed to the public, the owner of the property reserves no rights that are

incompatible with the full enjoyment of the public. *Town of Palm Valley v. Johnson,* 17 S.W.3d 281, 287 (Tex.App.—Corpus Christi 2000, pet. filed) (quoting *Scott v. Cannon,* 959 S.W.2d 712, 718 (Tex.App.—Austin 1998, pet. denied)). An agreement in a deed that allows an individual to inhibit a governmental entity from exercising the discretion necessary to exercise a governmental function is not enforceable. *Fidelity Land and Trust Co. of Texas v. City of West Univ. Place,* 496 S.W.2d 116, 118 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) The requirement that the state seek approval from HID prior to any reconstruction or reconstruction is void as against public policy or as inconsistent with the grant, and cannot be given effect.

■ When both the granting clause and reservation clause cannot be given effect, the granting clause prevails and the reservation clause fails. *Mercer v. Bludworth,* 715 S.W.2d 693, 701 (Tex.App.—Houston [1st. Dist] 1986, writ ref'd n.r.e.); *see Town of Palm Valley,* 17 S.W.3d at 287 (when a reservation in a dedication is void as against public policy, the dedication remains effective, but the condition is inoperative); *see also Ryan Props., Inc.,* 284 S.W.2d at 214 (same).

HID argues that the restriction is necessary to protect HID's facilities from injury, and is, therefore, consistent with public policy. HID argues that without the restriction, HID is binding itself in such a way as to restrict its free exercise of its governmental functions. We do not find that the deed limits HID's ability to fulfill its function as an irrigation district. HID argues that without the restriction requiring prior approval, it would be unable to protect its facilities from damage. Although we recognize that the risk of damage to HID's facilities is a legitimate concern, this concern does not allow HID to bind the state to a provision requiring

HID's approval of any construction on the roadway easement. The restriction impermissibly limits the state from exercising its jurisdiction as to construction on the roadway.

### HID's Challenge to the Declaratory Judgment

In its fifth issue, HID argues that Caprock's claims were not appropriate for declaratory relief and therefore, the trial court erred by awarding declaratory relief in favor of Caprock, and awarding attorneys' fees under the Uniform Declaratory Judgments Act.[13] Caprock responds that HID did not preserve error. We agree that HID has failed to preserve this complaint for appeal.

The Texas Rules of Civil Procedure state that a party waives appeal for [e]very defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the judgment is signed. TEX.R.CIV.P. 90. When a party fails to specially except or otherwise make the trial court aware of a complaint that a declaratory judgment action is improper prior to the trial judge signing the judgment, the party fails to preserve that complaint for appeal. *Gulf Ins. Co. v. Vantage Props.*, 858 S.W.2d 52, 55 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Hudspeth v. Hudspeth*, 756 S.W.2d 29, 34 (Tex.App.—San Antonio 1988, writ denied); *Narisi v. Legend Diversified Invs.*, 715 S.W.2d 49, 52 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The record before this Court contains no special exceptions to Caprock's claims under the Declaratory Judgment Act, nor does the record show that HID raised any argument to the trial court that declaratory judgment was improper.

Furthermore, to preserve a complaint for appellate review, an appellant must have presented the complaint to the trial court by a timely request, objection, or motion that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint...." TEX.R.APP.P. 33.1. HID made no objection to Caprock's presentation of evidence as to attorneys' fees in relation to the declaratory judgment action. HID objected to the evidence of attorneys' fees on the grounds that attorneys' fees would not be recoverable if the trial court found HID to have sovereign immunity; however, HID did not offer any objection that such fees were unrecoverable because the action could not be decided under the Declaratory Judgment Act. Caprock stated that the evidence of attorneys' fees was being offered to support a claim for fees under the declaratory judgment action. When Caprock offered to the trial court a case that, Caprock argued, stood for the proposition that sovereign immunity was waived in declaratory judgment cases, HID made no comment.

We find that HID has failed to preserve for appeal its complaint that declaratory judgment was improper in this case and attorneys' fees should not have been awarded under the Declaratory Judgment Act. Issue number five is overruled.

### Caprock's Liability for Damages to HID Facilities

With its sixth issue, HID argues that Caprock is liable for any damage Caprock causes to HID's facilities and operations.

---

**13.** TEX.CIV.PRAC. & REM.CODE ANN. § 37.001– .011 (Vernon 1997).

Much of the argument contained in this issue is based on HID's concern that the trial court concluded that Caprock had an absolute right to use the roadway. As we have discussed in regards to conclusion of law number three, the trial court was not absolving Caprock of any and all liability in its use of the roadway, but was merely recognizing that Caprock has the right to install facilities along, on, or across the roadway.

HID argues that the trial court erred to the extent that it declared that Caprock would never have an obligation to pay "compensation for present or future expense increases, disruptions and/or injuries to [HID's] facilities and operations...." We have already acknowledged that the trial court erred in finding of fact number thirteen when it found that Caprock's installation would not interfere or affect HID's future operations. However, although the trial court did find that Caprock's installation had not injured HID, the trial court did not hold that Caprock would never have any obligation as to any future injuries to HID, and we do not address any liabilities that may arise from future conduct; to do so would constitute an impermissible advisory opinion. *See Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex.1968) (judgment declaring liability under judgment which may be rendered in the future is advisory in nature and beyond the power of the courts).

■■■■ HID also argues that Caprock has committed a taking under the Texas Constitution and must pay for that taking. The Texas Constitution requires that a person be compensated for any property "taken, damaged or destroyed for or applied to public use" unless that person has consented to the taking. TEX. CONST. art. I, § 17. We do not find this provision to be applicable to the case now before this Court. HID did not have any property taken by Caprock; the property had already been conveyed to the state for use as a roadway, and Caprock's usage is consistent with the property's character as a roadway.

■■■■ HID also argues that Caprock is liable as a trespasser. As we have noted, Caprock entered onto the roadway under the authority of permits issued by TxDoT pursuant to the Texas Utility Code. Caprock is not a trespasser in regards to its activities on the road rights-of-way.

Issue number six is overruled.

### Fees for the Use of the Roadways

■■■■ In its seventh issue on appeal, HID argues that it had a right to charge Caprock a fee for using those parcels for which Caprock had no right to use, or where Caprock exceeded its right of usage. HID also argues that it has a right to charge reasonable fees for compensation for existing and future injuries caused by Caprock's use of HID's property, even where Caprock's usage is rightful.

HID contends that it has a right to charge a fee of any trespasser using HID's property, therefore, HID argues it may charge Caprock a fee for those parcels where Caprock is a trespasser.[14] This argument necessary fails because we have already found that Caprock had a right to install its facilities upon the property involved in this case. HID also argues that it has a right to charge a fee for those parcels where Caprock has exceeded its statutory right of usage.[15] As with HID's

14. HID specifically refers to parcels one, two and three, and states that Caprock is "arguably also a trespasser upon parcels four through thirteen."

15. HID refers to parcels fourteen through fifty-one in this argument.

trespass argument, this claim also fails, because we have found that Caprock did not exceed its statutory rights by installing its fiber-optic cable upon these parcels without HID's prior approval.

HID argues in the alternative, that, even where Caprock has a right to install its fiber-optic cable, HID may still charge a fee for any installation upon property owned by HID. HID argues that it may levy such a fee against Caprock to pay existing and anticipated increases in maintenance costs. We find that, under Texas law, HID does not have the authority to charge Caprock a fee to pay for maintenance of HID's facilities.

▐▐ HID is a water district created under article 16, section 59 of the Texas State Constitution. A district created under this section of the constitution has only those powers expressly granted by statute. *Harris County Water Control and Improvement Dist. No. 58 v. City of Houston,* 357 S.W.2d 789, 795 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). The powers granted by statute include those "necessarily implied as an incident to the express powers given." *Id.* By statute, not less than one-third nor more than two-thirds of HID's estimated annual operating and maintenance expenses shall be paid by assessments against all the land in the irrigation district to which HID can furnish water through its irrigation system, or through an extension of its system, with the remainder of the estimated expenses being paid by persons in the district who use, or make application to use, water provided by HID. TEX.WATER CODE ANN. § 58.305 (Vernon 1988). The statute controlling HID's assessment of fees explicitly limits the persons subject to fees to pay

HID's maintenance costs. HID is not allowed by statute to levy a fee upon Caprock to pay HID's maintenance costs.[16] Issue number seven is overruled.

### Public Waters

In its appellate brief, HID states that it is undisputed that HID's canals and rights-of-way are not public waters. In its brief, and again at oral argument, Caprock disputed this, arguing that the waters contained in HID's canals, drains, and pipelines are public waters. Caprock argues that, as public waters, HID's water would be subject to section 181.082, thus allowing Caprock to install facilities along, on, or across HID's waterways. We do not address this issue because the trial court did not issue any finding of fact, or conclusion of law holding the waters controlled by HID to be "public waters," nor did the judgment issued by the trial court contain any declaration to that effect.

The judgment of the trial court is AFFIRMED.

---

16. HID also challenges the trial court's conclusion that HID's attempt to charge Caprock a fee violated federal law. Because we hold that HID is precluded by state law from imposing a fee on Caprock, we do not address the federal law question, as it is not necessary to the final disposition of this appeal. TEX. R.APP.P. 47.1