NUMBER 13-00-753-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI



 

 

FRANK J. PAGEL,                                                                 Appellant,

 

                                                   v.

 

RICHARD WHATLEY D/B/A

WHATLEY FLYING SERVICE,                                                   Appellee.

 



 

                       On appeal from the County Court at Law

                                 of Calhoun
County, Texas.

 



 

                                   O P I N I O N

 

         Before Chief Justice Valdez and Justices Hinojosa
and Castillo

                                  Opinion by Justice Castillo

 








Appellant Frank
J. Pagel appeals from a trial court judgment in favor
of appellee Richard Whatley, doing business as
Whatley Flying Service (AWhatley@).  Whatley=s suit was
based on Pagel=s non-payment
of an open account.  Pagel
filed a counterclaim, seeking damages for usurious interest charged on the
account.  After a bench trial, judgment
was entered in favor of Whatley in his suit on the open account.  A take-nothing judgment was entered disposing
of Pagel=s counterclaim,
from which this appeal ensued.  We
affirm.

Factual
Background

Richard Whatley
is a self-employed farmer and owner of Whatley Flying Service, a crop dusting
service, in business since 1966.  Frank Pagel, a farmer, was Whatley=s first customer and motivated Whatley to
go into the business of crop dusting.  Pagel employed his services during the period between 1992
and 1995 on an open account.  Pagel would request crop dusting of fields on his farm, and
Whatley would provide the service and bill him, sometimes charging him less
than the normal rate.  Pagel was to pay at a later date.  All services performed were at Pagel=s request.   As of the time of trial, the principal
outstanding balance due on Pagel=s account was
$7,971.69, which represented Amore than
reasonable@ charges for
the services rendered.  Pagel last paid on the account on December 23, 1996.   








Wanting Pagel to Ajust pay his
bill@ and after
several visits to Pagel=s home, Whatley told Pagel
that he would Adismiss all
service charge[s] and everything.@  Pagel told him that
the service charge was too high, so Whatley agreed to take the service charges
off the account and requested that Pagel make
arrangements to pay with Whatley=s attorney
within the next month.[1]  At that time, Pagel
agreed to pay him 10%  interest on the
money owed.  The agreement was not
reduced to writing.   Whatley waited the
month and sent Pagel a Acorrected statement of just the money that
he owed me so that there would be no question about anything other than the
principal that he owed me.@   Whatley explained that, in 1994, Pagel had agreed to pay him Awhatever interest I normally charged,@ on the
approximately $10,000 due on his account at that time, if Whatley would Afinance him
through@ that
season.  Whatley agreed and completed a Acredit
statement,@ reflecting 18%
per year which was his finance rate; however, Pagel
never signed the document, despite Whatley=s repeated
attempts to have Pagel sign it.  The statements that Whatley sent thereafter
included the 18% annual interest charge on the account but that charge was
ultimately deleted.   Regarding billing Pagel at 18% interest, Whatley explained:

We have a
computer, and it sends out a statement; and if a person agrees to pay the
service charge that we charge, we have a little button.  We push on it, and it puts an asterisk by its
name, and it sends out the service charge to that person.  If it does not have a service charge, we push
the little button, and it takes it off. 
It doesn=t even put it
on there.  So, he agreed to it, and we
punched the computer.

 

* * *

My wife and I
were both sitting in the office when he made the agreement, and she can testify
to that fact, too.  She was there.  She=s the one that
pushed the button.  

 

* * * 

He [Pagel] agreed to give me a written agreement, but he never
gave it to me.       








Charging 18%
was Whatley=s standard
procedure, if he had Aan agreement
with a person.@  He knew that he needed a written agreement
with Pagel in order to charge 18% interest.   Whatley ultimately sued for the principal
amount, attorney=s fees, and
pre-judgment interest.  

On December 22,
1998, Whatley filed a lawsuit alleging that, after demand,  Pagel had not paid
for crop dusting products and services rendered at Pagel=s request.  Signed on the same date and attached to the
original petition was Whatley=s signed
statement:

I, RICHARD
WHATLEY, hereby certify that I was fully and completely informed by CHARLES
HOOD of the possibility and consequences of a usury violation in regard to
collection work he is doing for me, and told him to proceed.  

 

Also attached
were invoices and a ledger sheet reflecting debits and credits to the account.[2]  The first and last debits to the account are
dated July 16, 1992, and September 28, 1995, respectively.   Reflected on the account are seven credits
with the last three payments made in 1996, leaving a balance of $7,971.69.[3]  No interest is shown on the ledger
sheet.  








On March 13,
2000, Pagel filed his counterclaim for usury.  He alleged that AWhatley charged
interest at the rate of 18% per annum and that there was no written or oral
agreement authorizing such charge.@  Pagel also
alleged he was Aentitled to
recover all sums paid to Whatley, plus three times the usurious interest
charged, plus attorney fees and costs of court . . .  and that Whatley is not entitled to recover
any sums from him as a result of such usurious conduct.@  

The Judgment

At the conclusion of the proceedings, the trial court stated:

Well, here=s B what I=ve seen from the
evidence is that there was an agreement, and that there was a bonafide error, and that there was a correction after
that.  I find for the plaintiff in this
case.  

 

In material
part, the judgment was entered in favor of Whatley for Aactual damages
in the principal sum of $7,971.69@ on his claim
for damages against Pagel.  A take-nothing judgment in favor of Whatley
was entered against Pagel on his counterclaim for
usury.  The judgment awards pre-judgment
interest at the rate of 6% per annum totalling
$518.92.  It further awards reasonable
and necessary attorney=s fees in the
amount of $6,759.95 and post-judgment interest at the rate of 10% per annum.

The Complained
of Findings of Fact and Conclusions of Law

Upon Pagel=s timely
request, the trial court filed its AFindings of
Fact and Conclusions of Law.@[4]    Appellant complains of the following
findings of fact:

6.  After Defendant agreed to pay Plaintiff
interest on the account, Plaintiff=s computer
automatically began adding eighteen percent (18%) interest, the normal amount
Plaintiff charged, but Defendant never signed and did not return it to
Plaintiff.

  

14.  Defendant was contacted by Plaintiff before
limitations ran and the principal balance alone demanded by Plaintiff.

 








15.  When Plaintiff contacted Defendant as
referred to in Finding of Fact #13, Plaintiff discovered a bona fide error had
been made in is [sic] computer charging eighteen percent (18%) per annum
interest, and first discovered Defendant would not sign and return to Plaintiff
the credit agreement referred to in Finding of Fact #5.[5]

 

17.  Plaintiff=s Original Petition, filed on December 22,
1998, and served on Plaintiff, had attached thereto an admission of usury and
did not change [sic] any interest.  

    


Appellant also
complains about the following conclusions of law:

 

          4.  Plaintiff=s charge of illegal interest was the
result of bona fide and accidental error.

 

5.  Plaintiff corrected its charge of illegal
interest within sixty (60) days of its discovery and gave Defendant written
notice of any violation before Defendant gave Plaintiff written notice of a
usury claim or filed suit therefore [sic].

 

6.  Defendant is entitled to take nothing on his
counterclaim of illegal interest.

 

Issue Presented for Review








Pagel presents a
single issue for our review.   He
complains that the trial court=s findings of
fact are not supported by legally or factually sufficient evidence and the
conclusions of law are erroneous.  More
specifically, he states that:  (1)
Whatley=s charge of
usurious interest was not the result of bona fide and accidental error and (2)
Whatley failed to statutorily cure his charge of illegal interest by giving
appellant correction and notice of his usury violation. In effect, Pagel complains that the evidence was legally and factually
insufficient to support the findings of fact and conclusions of law that
Whatley established two statutory defenses. 
  

Standard of
Review

          This
is an appeal challenging the legal and factual sufficiency of the evidence of
the written findings of fact and conclusions of law.  In considering a factual sufficiency issue,
we must review all the evidence in the record. 
Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).  Inferences may be used to support the
judgment Aso long as they
are reasonable in light of all the evidence.@  Id.  We will overturn a trial court=s factual
findings only if the challenged findings shock the conscience, clearly demonstrate
bias, or are so against the great weight and preponderance of the evidence as
to be manifestly unjust.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1999).  If those factual findings are found to be
against the great weight and preponderance of the evidence, we must set aside
the verdict and remand the cause for a new trial.  In re King=s Estate, 244 S.W.2d
660, 661 (Tex. 1951).  We review a
factual sufficiency issue in a bench trial using the same standard that we use
in reviewing factual sufficiency following a jury verdict.  K.C. Roofing Co., Inc. v. Abundis, 940 S.W.2d 375, 377 (Tex. App.BSan Antonio
1997, writ denied).  








Legal sufficiency
issues following a bench trial are also reviewed in the same manner as legal
sufficiency issues following a jury verdict. 
Id.  We review a legal
sufficiency challenge by considering all the evidence in the light most
favorable to the prevailing party, indulging every reasonable inference in that
party=s favor.  Formosa Plastics vs. Presidio Eng=rs, 960 S.W.2d
41, 48 (Tex. 1998); Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846,
853 (Tex. App.BCorpus Christi
1999, pet. denied).   A Ano evidence@ standard of
review is applied when the party not bearing the burden of proof at trial
challenges a finding of fact by arguing that the evidence is legally
insufficient to support the finding.  Hickley v. Couchman,
797 S.W.2d 103, 109 (Tex. App.BCorpus Christi
1990, writ denied).  A legal sufficiency
point may only be sustained when the evidence conclusively establishes the
absence of a vital fact, the record discloses no more than a mere scintilla of
evidence to prove a vital fact, or the court is bound by rules of law or
evidence from giving weight to the only evidence offered to prove a vital
fact.  Hines v. Commissioner for
Lawyer Discipline, 28 S.W.3d 697, 701 (Tex. App.CCorpus Christi
2000, no pet.).  

Conclusions of
law are reviewed de novo and will be upheld if the judgment can be
sustained on any legal theory supported by the evidence.  Harlingen Irrigation Dist. Cameron County
No. 1 v. Caprock Comm. Corp., 49 S.W.3d 520, 530
(Tex. App.BCorpus Christi 2001,
pet. denied).  We will not reverse an
incorrect conclusion of law if the controlling findings of fact support a
correct legal theory.  Id. at
531.  Nor will we reverse conclusions of
law unless they are erroneous as a matter of law.  Id. at 530-31.

Discussion  








In his brief, Pagel asserts that the undisputed evidence in the case,
including Whatley=s admissions,
shows that Whatley charged Pagel the illegal rate of
interest of 18%.  He adds that, although
the trial court=s findings
acknowledge the charging of this illegal rate of interest, the trial court made
the erroneous and unsupported findings that: 
(1) such charges were the result of bona fide and accidental error; and
(2) such illegal charges were statutorily Acured@ by Whatley=s written
notice and correction of such violation. 
Pagel complains that the trial court erred in
finding excuse on the basis of two alternative defenses: (1) that the usurious
charges were the result of bona fide and accidental error; and, (2) that
Whatley Acorrected@ the illegal
charges by sending a statement with the interest charges deleted and by giving
written notice of the violation. 
Appellant concludes that neither of these defenses are supported by
legally and factually sufficient evidence, and that the trial court=s legal
conclusions regarding the defenses are erroneous.   

Whatley
counters that usury was not charged and, even if charged, it was a result of
accidental and bona fide error.  He
further states that he cured any complained-of error.   

Pagel=s counterclaim
was based upon the relief accorded by section 305.001 of the Texas Finance
Code, which provides:  

(a) A creditor
who contracts for, charges, or receives interest that is greater than the
amount authorized by this subtitle is liable to the obligor for an amount that
is equal to the greater of:  

 

(1) three times
the amount computed by subtracting the amount of interest allowed by law from
the total amount of the interest contracted for, charged, or received; or,

 








(2) $2,000 or
20 percent of the amount of the principal, whichever is less.

 

Tex. Fin. Code Ann. ' 305.001
(Vernon Supp. 2002).  

 

Whatley=s defense to
that counterclaim was premised upon sections 302.002, 305.101, and 305.103(a)
of the finance code.  Section 302.002
provides, in relevant part:

If a creditor
has not agreed with an obligor to charge the obligor any interest, the creditor
may charge and receive from the obligor legal interest at the rate of six
percent per year on the principal amount of the credit extended beginning on
the 30th day after the date on which the amount is due and
payable.  

 

Tex. Fin. Code Ann. ' 302.002
(Vernon Supp. 2002).  

 

Sec.
305.101 provides:

 

A creditor is
not subject to penalty under this chapter for any usurious interest that
results from an accidental and bona fide error.    

 

Tex. Fin. Code Ann. ' 305.101
(Vernon Supp. 2002).  

 

Section
305.103(a) provides: 

 

A creditor is
not liable to an obligor for a violation of this subtitle if: 

(1) not later
than the 60th day after the date the creditor actually discovered
the violation, the creditor corrects the violation as to that obligor by taking
any necessary  action and making any
necessary adjustment, including the payment of interest on a refund, if any, at
the applicable rate provided for in the contract of the parties; and 

(2) the
creditor gives written notice to the obligor of the violation before the
obligor gives written notice of the violation or files an action alleging the
violation.

 

Tex. Fin. Code Ann. '305.103(a)
(Vernon Supp. 2002).

 








There are two
affirmative defenses to a claim for usury, corresponding to Pagel=s
complaints.  Under the first defense,
there is no penalty when usurious interest results from an Aaccidental and
bona fide error.@  Tex.
Fin. Code Ann. ' 305.101
(Vernon Supp. 2002); Tyra v. Bob Carroll Const.
Co., 639 S.W.2d 690, 691 (Tex. 1982). 
Under the second defense, liability is not imposed where the creditor
gives written notice to the obligor of the violation before the obligor gives
written notice of the violation or files an action alleging the violation.  Tex.
Fin. Code Ann. ' 305.103(a)
(Vernon Supp. 2002). 

ACuring@ the Error 

In his brief, Pagel correctly states that a creditor is not liable to an
obligor for a usury law violation if the creditor (1) takes sufficient and
timely corrective action,  and (2) gives
written notice of the violation to the obligor of the violation before the
obligor gives written notice of the violation or files an action alleging the
violation.  Id.  Pagel complains
that the trial court=s findings of
fact and conclusions of law were erroneous because Whatley failed to
statutorily cure his charge of illegal interest by giving him correction and
notice of his usury violation.[6]      








On
cross-examination regarding written notice to Pagel
about the interest charged Aabove the rate
that you=re allowed to
charge,@ Whatley testified
that his statement filed with the lawsuit was his notice.   Upon further questioning, he agreed that the
petition was his written notice to Pagel that he had
corrected the interest and admitted there was no other written statement
regarding violation of the usury statute and taking steps to correct it.   He testified that  he Anever received
one nickel=s worth of
interest@ from Pagel.   In a
November 1994 conversation, Pagel told him that AI=ve been in
business before, and I know how not to pay you;@ and he said, AIf you file
this lawsuit, I=m not going to
pay you anything.@  Of the three checks that Pagel
sent him, all amounts were applied to principal only.  








Pagel was then
called to testify.  He agreed that he
requested the products used and  services
Whatley performed and the charges were reasonable and necessary.  He agreed that he had an outstanding balance
on his account but did not know whether $7,971.69 was a reasonable and
necessary charge.   When asked, AOther than the
usury claim, do you have any other defense to this lawsuit,@ he answered, ANo, sir.@         On
questioning by his counsel, Pagel agreed that there
was not a written document allowing Whatley to charge 18% interest per
year.  Although Whatley and he Atalked about@ a charge for
interest, Athere was never
any agreement@ and no figure
quoted.  When he made payments in 1996,
he did not know that they would be applied to principal only.  He did not receive written notification from
Whatley that the interest charged was usurious.   Upon questioning by Whatley=s counsel, he
admitted agreeing to pay interest Abut we never
did talk about rates@ and agreed to
let Whatley charge him for interest.  He
acknowledged that Whatley=s wife was
present when the agreement was made.  He
admittedly did not sign Whatley=s credit
agreement.  He conceded that prior to his
attorney=s letter
regarding usurious interest, he had not made any claim that Whatley was
charging illegal interest.[7]   Pagel testified he
had complained to Whatley that the interest was Aawful high.@ 
When shown the exhibit, he admitted the ledger sheet Adoesn=t reflect
interest on the invoices.@[8]   








The record
further shows that, after several unsuccessful efforts to secure payment on the
account, Whatley accepted that Pagel had not paid on
the account and had not returned the executed credit agreement.   Contrary to appellant=s contention,
Whatley corrected any usury violation by deleting charges of any interest
whatsoever on the unpaid account, making demand for only the principal balance
reflecting products and services rendered, and applying payments made to
principal only, thereby satisfying the first prong of finance code section
305.103(a).  Tex. Fin. Code Ann. '305.103(a)(1)
(Vernon Supp. 2002).  In addition, the
record before us establishes that by Whatley=s statement attached to his original
petition, he provided Pagel  notice of the possibility and consequences of
a usury violation.  The sufficiency of
the notice can reasonably be inferred by Pagel=s actions after
he received Whatley=s written
statement.   First, we note that Pagel admittedly made no claim for a usury violation at any
time prior to his attorney=s letter dated
over seven months after the lawsuit was filed against him.  Second, Pagel filed
his counterclaim over fifteen months after receiving Whatley=s
statement.  The trial court could
reasonably infer that the statement was sufficient to prompt the counterclaim
for usury where none had been urged previously. 

Considering all
the evidence in the record as is required for a review of factual sufficiency,
we find that the findings of fact neither shock the conscience, nor demonstrate
bias, and they were not against the great weight and preponderance of the
evidence.  See Ellis, 971 S.W.2d
at 406-07; Ortiz, 917 S.W.2d at 772. 

Viewing all the
evidence in the light most favorable to Whatley as the prevailing party,
indulging every reasonable inference in his favor, we hold that the evidence
was legally sufficient to establish that Whatley contacted Pagel
before limitations ran and demanded the principal balance alone, as the trial
court found.  See Formosa
Plastics, 960 S.W.2d at 48.  

We also find
that the trial court did not err in entering the conclusions of law as Whatley
established his excuse as a matter of law. 
See Harlingen Irrigation Dist. Cameron County No. 1, 49 S.W.3d at
530.

Because we have
found that Whatley conclusively established an affirmative defense to the
counterclaim under section 305.103(a) of the Texas Finance Code, we need not
address whether he also established a defense of Abona fide and accidental error.@  Tex. R. App. P. 47.1.  








We note that Pagel does not address the sixty-day requirement in section
305.103(a)(1) of the Texas Finance Code, and he does not address conclusion of
law number 6, which states, ADefendant is
entitled to take nothing on his counterclaim of illegal interest.@  Therefore, Pagel
has waived any error related to these issues.[9]  

Conclusion

We overrule Pagel=s sole issue
and affirm the judgment of the trial court. 
                                                                    

ERRLINDA
CASTILLO

Justice

 

Do not publish.

Tex. R. App. P. 47.3(b).

 

Opinion delivered and filed

this 16th day of May,
2002.











[1]
Fred Turner, an attorney, had written Pagel a letter Arequesting
him that he pay his bill.@  Whatley testified he personally had requested
payment several times throughout the four-year period. 





[2]
The petition was admitted as an exhibit at the trial.  The ledger sheet was admitted as a separate
exhibit. 





[3]
The credits reflect as follows: 11/18/92  $500; 2/3/93 
$240.23; 2/5/94 $73.60; 7/2/95 
$324.50; 4/7/96  $2,000; 6/28/96
$1,000; 12/23/96 $4,000.  





[4]
Tex. R. Civ. P. 296.  





[5]
Finding of fact number 5 states: APlaintiff
sent Defendant a written credit agreement memorializing Defendant=s
agreement to pay eighteen percent (18%) per annum service charges to
Defendant=s statements@
(emphasis in the original).  Finding of
fact number 13 states: APlaintiff never
collected any interest or applied payments to interest; all of Defendant=s
payments were applied to old principal balances.  

 





[6]
Specifically, Pagel challenges
findings of fact numbered 14, 15, and 17 as well as conclusions of law numbered
5 and 6.  





[7]
Admitted as an exhibit at trial, a letter dated July 7, 1999,
from Pagel=s
counsel advised Whatley=s counsel of a
claim for usury.  Whatley was
cross-examined about the letter, which was received after he filed his lawsuit,
acknowledging he had reviewed it with his attorney and instructed his attorney
to proceed with the case.  On March 13,
2000, Pagel filed his counterclaim for usury.





[8]
The account balance reflected on the ledger sheet is A7971.69"
and reflects a carryover balance from 1995 in the amount of A14971.69."  The exhibit shows that in 1996, Pagel made payments in the amounts of $2,000, $1,000, and
$4,000.  No other payments are reflected
thereafter.  





[9]
In addition, we note that the record affirmatively establishes that, well
before the lawsuit was filed, Whatley deleted the 18% interest altogether.