TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

 

 

 

NO. 03-04-00335-CV

 

 

 

Elizabeth
Goodson, Appellant

 

v.

 

Adelina
Castellanos, Appellee

 

 

 

FROM THE DISTRICT COURT OF WILLIAMSON
COUNTY, 277TH JUDICIAL DISTRICT

NO. 02-758-F277, HONORABLE KEN
ANDERSON, JUDGE PRESIDING

 

 

O
P I N I O N

                        Elizabeth
Goodson traveled to Kazakstan to adopt K.G.  After returning from Kazakstan,
Goodson and her girlfriend, Adelina Castellanos, filed a joint petition to
adopt K.G. in Bexar County, and a district court granted the adoption. 
Subsequent to the adoption, the relationship between Goodson and Castellanos
ended, and Castellanos filed a suit affecting the parent-child relationship. 
After a trial, the district court entered an order appointing Castellanos as
the sole managing conservator of K.G. and ordered Goodson to pay attorney’s
fees and child support.  Goodson appeals the judgment of the district court. 
We will affirm the judgment of the district court in part and reverse and
remand in part. 

 

BACKGROUND

 

                        In
1997, Goodson and Castellanos began dating, and, shortly thereafter, the couple
began living in Goodson’s home.  During the time the couple lived together,
Goodson began researching adoption options.  During her search, Goodson found
K.G. in Kazakstan and began the adoption process.  She filed an application
with an adoption agency and initiated the Immigration and Naturalization
Service procedure to allow K.G. to enter the United States.  

                        In
September 2000, Goodson traveled to Kazakstan and adopted K.G., who was three
years old at the time.  The Kazakstanian adoption certificate lists Goodson as
the adoptive parent.  Upon returning to Texas, Goodson obtained a Texas birth
certificate for K.G. and filed a certificate of adoption with the Department of
Health, both of which identified Goodson as K.G.’s mother.  In March 2001,
Goodson and Castellanos filed a joint petition to adopt K.G. in Bexar County. 
A Bexar County district court granted the adoption, and the decree specified
that a parent-child relationship existed between K.G. and Goodson and K.G. and
Castellanos. 

                        In
April 2002, the relationship between Goodson and Castellanos ended.  Later that
month, Castellanos filed a suit affecting the parent-child relationship.[1] 
After a hearing, the district court issued temporary orders appointing Goodson
and Castellanos as temporary joint managing conservators for K.G. and
specifying that Castellanos had the exclusive right to establish K.G.’s primary
residence.  In addition, the court ordered Goodson to pay child support and
provide health insurance for K.G.  Prior to the trial, the district court
appointed an amicus attorney, Ed Walsh, to represent the best interests of
K.G.  Both parties were required to deposit $5,000 into an account to pay for
the services provided by the amicus.

                        After
the trial, the jury determined that Castellanos should be appointed sole
managing conservator for K.G. and concluded that Goodson should pay attorney’s
fees to Castellanos.  Subsequently, the court issued an order that appointed
Castellanos as the sole managing conservator of K.G., appointed Goodson as the
possessory conservator of K.G., ordered Goodson to make monthly child support
payments in the amount of $788.00 and pay for K.G.’s health insurance, and required
Goodson to pay $45,854.41 in attorney’s fees to Castellanos and $5,035.50 in
attorney’s fees to Walsh.  The order also declared that Goodson was given the
standard possession rights described in the family code.  See Tex. Fam.
Code Ann. §§ 153.311-.317 (West 2002 & Supp. 2006).  On the same day it
issued the order, the court also released an opinion concluding that two
members of the same sex may not jointly adopt a child under Texas law.  Goodson
appeals the judgment of the district court.

 

DISCUSSION

                        Goodson
raises ten issues on appeal.  First, Goodson argues that the trial court erred
in rendering its judgment because the Bexar County adoption order is void. 
Second, she asserts that she should have been appointed as K.G.’s sole managing
conservator because, as K.G.’s mother,  she is entitled to the presumption in
favor of naming parents sole managing conservators.  Next, she argues that,
because she is the sole legal parent of K.G.,  the district court violated her
constitutional right to make decisions concerning K.G.’s care, custody, and
control free from governmental interference by appointing Castellanos as the
sole managing conservator.  In addition, she argues that the district court
abused its discretion by (1) failing to admit evidence concerning Castellanos’s
brother and showing that Castellanos allowed personal contact between her
brother and K.G. and (2) ordering Goodson to pay child support and attorney’s
fees.  Finally, she argues that there is insufficient evidence to support the
amount of child support awarded or the award of attorney’s fees.  

The Bexar County Adoption is
Not Void

 

                        In
her first issue, Goodson contends that the district court erred when it issued
a judgment in favor of Castellanos because the Bexar County adoption decree is
void.  Further, Goodson asserts that, because the decree is void, Castellanos
has not been awarded any legal parental rights over K.G.  Additionally, Goodson
argues that, because she previously obtained a final adoption order from
Kazakstan, she is the only legally recognized parent for K.G.  Finally, she
argues that Castellanos’s claims are barred by res judicata and that
Castellanos does not have standing to maintain this suit.

Jurisdiction

                        Goodson
argues that the Bexar County adoption decree is void and subject to collateral
attack.  See Employers Cas. Co. v. Block, 744 S.W.2d 940, 943 (Tex.
1988) (collateral attack is attempt to avoid effect of one judgment in
proceeding initiated for different purpose), overruled on other grounds by
State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d 696 (Tex. 1996). 
Specifically, Goodson argues that the Bexar County district court lacked
subject matter jurisdiction over an adoption of a child by two members of the
same sex and lacked jurisdiction to issue the adoption decree.  Therefore, she
asserts that the decree is subject to collateral attack.  See Austin Indep.
Sch. Dist. v. Sierra Club, 495 S.W.2d 878, 881 (Tex. 1973) (judgment may be
collaterally attacked on grounds that court has: (1) no jurisdiction over party
or over property,  (2) no jurisdiction over subject matter, (3) no jurisdiction
to enter particular judgment, or (4) no capacity to act as court); Woodfin
v. Coleman, 931 S.W.2d 383, 384 (Tex. App.—Austin 1996, writ denied)
(same).                          In support of these assertions, Goodson refers
to various definitions found in the family code as proof that two individuals
of the same sex cannot both be parents of one child.  See, e.g., Tex.
Fam. Code Ann. §§ 101.024 (definition of parent), 101.025 (West 2002 &
Supp. 2006)  (definition of parent-child relationship).  Goodson also refers to
section 192.008 of the health and safety code, which states that a
supplementary birth certificate for an adopted child “must be in the names of
the adoptive parents, one of whom must be a female . . . and the other of whom
must be a male” and notes that Castellanos’s name does not appear on either
K.G.’s birth certificate or his Texas certificate of adoption.  See Tex.
Health & Safety Code Ann. § 192.008(a) (West 2001); see also id. § 192.002(c),
(d) (West 2001) (referring to social security numbers of “the mother and
father” on birth certificates).   

                        Finally,
Goodson cites to the family code provision in effect during the relevant time
that specified who may adopt a child.  See Act of May 16, 1997, 75th
Leg., R.S., ch. 561, § 14, sec. 162.001, 1997 Tex. Gen. Laws 1983, 1991
(“former section 162.001”).  Former section 162.001 specified that an adoption
may occur when (1) the child’s parental relationships with each living parent
have been terminated, or a suit seeking termination of the relationships has
been filed; (2)  the spouse of a parent whose relationship has not been
terminated desires to adopt the child; or (3) a former stepparent wants to
adopt the child and has been caring for him.  Id.[2] 
Goodson argues that Castellanos was not eligible under this section because (1)
Goodson was the only legal parent, and her parental rights were not terminated;
(2) Castellanos and Goodson were never legally married; and (3) Castellanos was
not a former stepparent of K.G.[3]


                        We
disagree with Goodson’s contention that the adoption decree is void.  Texas
district courts are courts of general jurisdiction.  Dubai Petroleum Co. v.
Kazi, 12 S.W.3d 71, 75 (Tex. 2000).  Article five, section eight of the
Texas Constitution provides that a district court’s jurisdiction “consists of
exclusive, appellate, and original jurisdiction of all actions, proceedings,
and remedies, except in cases where exclusive, appellate, or original
jurisdiction may be conferred by this Constitution or other law on some other
court, tribunal, or administrative body.”  Tex. Const. art. V, § 8; see also
Kazi, 12 S.W.3d at 76 (district court had jurisdiction over claim
because wrongful death claim was within constitutional jurisdiction of court,
not because party satisfied statutory requirements).  The government code
further specifies that district courts “may hear and determine any cause that
is cognizable by courts of law or equity and may grant any relief that could be
granted by either courts of law or equity.”  Tex. Gov’t Code Ann. § 24.008
(West 2004).  Unless the legislature or Congress has provided that a claim be
heard elsewhere, district courts are presumed to have subject matter
jurisdiction over a claim.  Kazi, 12 S.W.3d at 75. Further, the modern
trend is to “‘reduce the vulnerability of final judgments to attack on the
ground that the tribunal lacked subject matter jurisdiction.’” Id. at 76
(quoting Restatement (Second) of Judgments § 11 cmt. E, at 113 (1982)).  Moreover,
the family code specifically authorizes district courts to issue adoption
orders.  See Tex. Fam. Code Ann. § 162.016 (West 2002). 

                        Assuming
without deciding that the district court erred in issuing the adoption decree,
the error was based on an erroneous construction of statutes, and the judgment
would be based on an erroneous holding of substantive law.  These errors would
not deprive the district court of jurisdiction over the adoption and would not
render the decree void.  See Lawrence v. Lawrence, 911 S.W.2d 450, 452
n.1 (Tex. App.—Texarkana 1995, writ denied) (judgment based on erroneous
holdings of substantive law is not void); Stinson v. Stinson, 668 S.W.2d
840, 841 (Tex. App.—San Antonio 1984, writ ref’d n.r.e.) (party could not
collaterally attack divorce decree even if court erroneously rendered judgment
because error of substantive law does not render judgment void); see also
Medina v. Yzaguirre, 304 S.W.2d 715, 718 (Tex. Civ. App.—Eastland 1957, no
writ) (mother’s consent was irregular and did not comply with requirements of
statute, but this did not deprive court of jurisdiction and did not render
adoption decree void).[4] 


                        Moreover,
the district court’s alleged error would not have deprived it of jurisdiction
to enter this particular adoption order.  A district court does not have
jurisdiction to enter a particular order when the action complained of “strikes
at the very power of the court to render the judgment.”  Sierra Club,
495 S.W.2d at 882.  However, as described previously, district courts have
jurisdiction over adoptions, and the family code specifically authorizes
district courts to issue adoption orders.  See Tex. Fam. Code Ann. §
162.016.  Therefore, the district court’s issuance of the adoption decree did
not run afoul of the court’s power to enter judgments. 

                        Accordingly,
we conclude that the district court was not deprived of subject matter
jurisdiction over the adoption or deprived of the jurisdiction to enter the
adoption decree at issue in this case.  Cf. Berry v. Berry, 786 S.W.2d
672, 673 (Tex. 1990) (although judgment may be erroneous, it is not void if
court had jurisdiction over parties and subject matter); see also Hubenak v.
San Jacinto Gas Transmission Co., 141 S.W.3d 172, 182-83 (Tex. 2004)
(failure to fulfill property code requirement was not jurisdictional). 
Consequently, Goodson may not collaterally attack the adoption decree.  See
Reiss v. Reiss, 118 S.W.3d 439, 443 (Tex. 2003) (nonjurisdictional claims
may render judgment voidable, in which case judgment may be corrected through
ordinary appellate process, but may not be used to collaterally attack
judgment). 

                        Furthermore,
Goodson did not attack the validity of the adoption within the deadline
mandated by statute.  In March 2001, the Bexar County district court, after
considering the qualifications of both parties, concluded that granting the
adoption was in the best interests of K.G. and issued the adoption decree. 
Neither party appealed the adoption decree, and Goodson did not attack its
validity until July 2003.  However, section 162.012 of the family code
prohibits all challenges to an adoption decree if they are filed more than six
months after an adoption order is signed.  Tex. Fam. Code Ann. § 162.012 (West
2002).  Section 162.012 of the family code, entitled “Direct or Collateral
Attack,” provides, in relevant part,  as follows:

 

 class=Section2>

 

(a) Notwithstanding Rule 329,
Texas Rules of Civil Procedure, the validity of an adoption order is not
subject to attack after six months after the date the order was signed.

 

 

 

 class=Section3>

Id.;[5]
see In re C.R.P., 192 S.W.3d 823, 826 (Tex. App.—Fort Worth 2006, no
pet.) (validity of adoption order is not subject to attack after six-month
deadline expires); see also Tune v. Texas Dep’t of Pub. Safety, 23
S.W.3d 358, 363 (Tex. 2000) (courts must enforce plain meaning of unambiguous
statute).  

                        By
enacting this statute, the legislature clearly evidenced its intent that it is
the public policy of this State that adoptions cannot be attacked more than six
months after the issuance of the adoption on any basis.[6] 
See Hobbs v. Van Stavern, No. 01-05-00632-CV, 2006 Tex. App. LEXIS 9529,
at *8 (Houston [1st Dist.] Nov. 2, 2006, no pet. h.) (no exception exists for
challenging adoption past six-month limitation, not even on grounds that
adoption is purportedly void).  The justifications in favor of this deadline
are numerous.  To encourage adoptions, adoptive parents should be assured that,
after a reasonable amount of time, their parental claims may not be brutally
revoked due to a procedural error, birth parents changing their mind years
later, or a change in relationship with another parent.  The destruction of a
parent-child relationship is a traumatic experience that can lead to emotional
devastation for all the parties involved, and all reasonable efforts to prevent
this outcome must be invoked when there is no indication that the destruction
of the existing parent-child relationship is in the best interest of the
child.  See Catholic Charities v. Harper, 337 S.W.2d 111, 114 (Tex.
1960) (“It would hardly have been in contemplation of the Legislature that,
after these steps [towards adoption] had been taken, involving not only
expense, time and trouble, but what is important the formation of ties of love
and affection, all of this should be nullified and set at naught for no reason
other than that the natural parents have changed their minds and desire to have
the children restored to them.”).  This deadline also comports with the public
policy of this State to provide children with a stable environment in which to
be raised.  See Tex. Fam. Code Ann. § 153.001(a)(2) (West 2002) (“The
public policy of this state is to . . . provide a safe, stable, and nonviolent
environment for the child.”); see also id. § 160.607(a) (West Supp.
2006) (preventing challenge to parentage of child with presumed father if not
filed within four years of birth of child), § 161.211 (West 2002) (prohibiting
direct or collateral attack on validity of order terminating parental rights
more than six months after order is issued); In re B.L.D., 113 S.W.3d
340, 353 (Tex. 2003) (section 162.211 was enacted to “ensure that children’s
lives are not kept in limbo”).

                        Goodson
argues that construing section 162.012 as prohibiting her from attacking the
validity of the Bexar County adoption will lead to absurd results.  For
example, she argues that, under this interpretation, if an individual is able
to obtain an adoption order for a pet or for a dead child, the adoption will
become unassailable after six months.  Further, she argues that this 

 class=Section4>

construction
will allow for an adoption of a child by a sex offender and an adoption
obtained by fraud or duress to become incontestable six months after the decree
issues.

                        We
first note that our interpretation of section 162.012 does not prohibit all
attacks on an adoption decree.  Parties have the option of appealing an
adoption decree as they do any judgment.  Second, in construing laws, we must
assume that judges will give effect to the directives of the legislature and
will follow the law accordingly and cannot assume that judges will violate the
power entrusted to them by the people of this State by engaging in actions that
are unauthorized and contrary to our laws.  This assumption is vital to the
workings of our government and seems especially appropriate when the
legislature provides clear principles and directives for judges to follow.  In
this regard, the legislature has clearly stated throughout the family code that
judges are to make decisions that are in the best interests of the children
involved. 

                        Finally,
we are not confronted with any of the hypothetical situations described by
Goodson.  See Brooks v. Northglen Ass’n, 141 S.W.3d 158, 164 (Tex. 2004)
(courts prohibited from issuing advisory opinions).  There is no allegation
that the adoption of K.G. by Castellanos was obtained through fraud or duress. 
On the contrary, both parties willingly entered this arrangement, and Goodson
only attempted to revoke the Bexar County adoption after her relationship with
Castellanos ended.  Moreover, if an adoption turns out to not be in the best
interest of the child, the family code provides methods for terminating the
parent-child relationship, see Tex. Fam. Code Ann. §§ 161.001-.007 (West
2002 & Supp. 2006), and for the removal of a child from an abusive home, see
id. §§ 262.001-.307(West 2002 & Supp. 2006).

                        

Fundamental
Error

                        Alternatively,
Goodson contends that the adoption decree is void because the Bexar County
district court committed fundamental error when it issued the adoption decree. 
Specifically, Goodson contends that the adoption decree violates the public
interest of the state of Texas that a child have at most one parent of each
sex. 

                        Fundamental
error is present when the record shows that “the public interest is directly or
adversely affected as that interest is declared in the statutes or the
Constitution of Texas.”  Texas Dep’t of Transp. v. T. Brown Constructors,
Inc., 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied).  However,
due to the policy concerns favoring preservation of error during trial or
during appeal, the fundamental error doctrine is a discredited doctrine that is
used in rare circumstances only.  In re B.L.D., 113 S.W.3d at 350.  The
doctrine has been employed to review issues of jurisdiction and certain types
of errors in juvenile delinquency cases.  Id.  The doctrine has not been
employed in this area of the law, and we decline the invitation to do so.  Cf.
id. at 351 (refusing to apply fundamental error doctrine to
parental-termination cases); In re R.L.H., 771 S.W.2d 697, 702-03 (Tex.
App.—Austin 1989, writ denied) (there is no blanket exception for failing to
comply with rules of appellate procedure in family law cases that would warrant
application of fundamental error doctrine).

                        To
support her argument that it is the public interest of this State that a child
have no more than one parent of the same sex, Goodson correctly points out that
various provisions of the health and safety code and the family code, including
certain provisions in chapter 160 of the family code, use the singular forms of
the words “mother” and “father” when describing parents.  See Tex. Fam.
Code Ann. §§ 101.024 (definition of parent), .025 (definition of parent-child
relationship), § 160.201 (West 2002) (specifying ways in which mother-child
relationship and father-child relationship may be established); Tex. Health
& Safety Code Ann. §§ 192.002(c), (d) (birth certificate must have space
for social security numbers of mother and father), .008(a) (birth certificate
may contain one male and one female adoptive parent).  In addition, Goodson
refers to section 160.102 of the family code, which states that an “adjudicated
father” is “a man who has been adjudicated . . . to be the father of a
child,” and reasons that a similar numerical restriction to one individual must
apply to an individual deemed to be the mother of a child.  See Tex.
Fam. Code Ann. § 160.102 (West 2002) (emphasis added); see also id. §
160.106 (provisions of chapter relating to determination of paternity also
apply to determination of maternity).  Drawing from these statutory provisions,
Goodson asserts that chapter 160 of the family code articulates an intention on
behalf of the legislature that children have only one parent of each sex, and
insists that any family code provision that might prohibit the invalidation of
an adoption of a child by two members of the same sex, including section
162.012, must yield to the policy articulated in chapter 160.  See id. §
160.002 (West 2002) (if another provision of family code conflicts with chapter
160, chapter 160 prevails).

                        However,
there is no direct statement of public policy found in the family code or the
constitution prohibiting the adoption of a child by two individuals of the same
sex.  See T. Brown Constructors, Inc., 947 S.W.2d at 659 (fundamental
error is present when public interest that is declared in statutes or
constitution is directly or adversely affected; judgment was fundamentally
erroneous because trial court usurped power of executive and violated
separation of powers provision of constitution); see also Tex. Const.
art. I, § 32 (directly stating that marriage can only 

 class=Section5>

consist of one
man and one woman).  Accordingly, any concern with the propriety of this
adoption must yield to the directly stated public policy of this State
prohibiting a direct or collateral attack on a judgment more than six months
after an adoption is ordered and providing children with a stable home
environment.  See Tex. Fam. Code Ann. §§ 162.012 (six-month deadline);
153.001 (overall public policy of State); Wristen v. Kosel, 742 S.W.2d
868, 870 (Tex. App.—Eastland 1987, writ denied) (when both parents love child,
public interest is neither directly nor adversely affected by question of which
parent is appointed managing conservator of child); see also Van Stavern,
2006 Tex. App. LEXIS 9529, at *9-10 (rejecting argument that appointment of
both members of same-sex couple as joint managing conservators violated public
policy).

                        Finally,
in arguing that the adoption is void, Goodson would have us ignore her role in
the adoption of K.G. by Castellanos.  Goodson and Castellanos together hired a
lawyer for the purpose of making Castellanos a co-equal legal parent of K.G.
and filed a joint petition for the adoption of K.G.  Importantly, K.G. regards both
Goodson and Castellanos as his parents, and the three of them lived as a family
for years.  It would be inequitable and unconscionable to allow Goodson to
invoke the jurisdiction of a court for the sole purpose of creating a
parent-child relationship between Castellanos and K.G. and then subsequently
allow her to destroy that same relationship because her relationship with
Castellanos had ended.  See Atkinson Gas Co. v. Albrecht, 878 S.W.2d
236, 240 (Tex. App.—Corpus Christi 1994, writ denied) (party may not accept
benefits of statute and then assert right inconsistent with position previously
taken for purpose of avoiding corresponding effects or obligations); Marshall
v. Lockhead, 245 S.W.2d 307, 308 (Tex. Civ. App.—Waco 1952, writ ref’d
n.r.e.) (one who accepts and retains fruits of judgment is estopped 

 class=Section6>

from later
asserting its invalidity); see also V.C. v. M.J.B., 748 A.2d 539, 552
(N.J. 2000) (parent has “absolute ability to maintain a zone of autonomous
privacy for herself and her child.  However, if she wishes to maintain that
zone of privacy she cannot invite a third party to function as a parent to her
child and cannot cede over to that party parental authority the exercise of
which may create a profound bond with the child”).  Utilization of the court
for this type of behavior is not something we will allow.  

                        For
all the reasons previously given, we conclude that the adoption decree is not
void and that the time for attacking the validity of the adoption has passed.[7]


 

 

Standing

                        Finally,
in her first issue, Goodson also argues that Castellanos had no standing to
file a suit affecting the parent-child relationship.  In her petition,
Castellanos asserted that she had standing to file suit because she was a
parent of K.G.  However, Goodson asserts that Castellanos could not demonstrate
that she had standing to file this suit because the Bexar County adoption
decree is void.  

                        However,
we have already concluded that the Bexar County adoption decree is not void,
and, therefore, both Goodson and Castellanos possess parental rights to K.G. 
Accordingly, Castellanos had standing to file this suit.  See Tex. Fam.
Code Ann. § 102.003(a) (West 2002 & Supp. 2006) (specifying which parties
may file suit affecting parent-child relationship).  Moreover, section 102.003
of the family code confers standing to any person who has had “actual care,
control, and possession of the child for at least six months ending not more
than 90 days preceding the date of the filing of the petition.”  Id. §
102.003(a)(9).  As noted by the district court, it is undisputed that both
parties had “actual care, custody, control and possession of [K.G.] for more
than six months (18 months from October 2000 to April 2002) and that period
ended less than 90 days before the filing” of the suit.  See Van Stavern,
2006 Tex. App. LEXIS 9529, at *6 (county court order created parent-child
relationship between same-sex adoptive parent and child, and, thus, parent had
standing in suit affecting parent child relationship). 

                        For
all the reasons previously discussed, we overrule Goodson’s first issue in its
entirety.  

 

Parental
Presumption and Constitutional Right 

                        In
her second and third issues on appeal, Goodson contends that the district court
erred in appointing Castellanos as the sole managing conservator because
Goodson is entitled to the presumption favoring parents over non-parents in the
appointment of managing conservators and because she has a constitutional right
to make decisions concerning the care, custody, and control of K.G. without
unwarranted governmental interference.  See Tex. Fam. Code Ann. §
153.131(a) (West 2002) (unless court finds that it is not in best interest of
child, court shall appoint parent as managing conservator);  Troxel v.
Granville, 530 U.S. 57, 65 (2000) (plurality) (liberty interest of parents
in care, custody, and control of their children is perhaps oldest of
fundamental rights); In re M.W., 959 S.W.2d 661, 665 (Tex. App.—Tyler
1997, writ denied) (right of parent to raise child is essential right). 
Specifically, she asserts that, because the Bexar County adoption is void, she
is K.G.’s only parent.  As such, she argues that she should have been appointed
the sole managing conservator of K.G. and should not have been required to pay
child support.  Further, she argues that the district court erred when it
limited her possession of K.G. to the “standard possession” described in the
family code.  See Tex. Fam. Code Ann. §§ 153.311-153.317 (standard
possession).

                        However,
as discussed previously, we have concluded that the Bexar County adoption is
not void.  Consequently, this case does not constitute a suit by a non-parent
against a parent for custody of a child; rather, this case is a suit affecting
the parent-child relationship between two individuals with co-equal legal
rights to a child.  Accordingly, Goodson is not entitled to a presumption that
Castellanos is not also entitled to.  Moreover, although Goodson contends that
the district court erred by appointing a non-parent as the sole managing
conseravtor of K.G., she premises this argument solely on her assertion that
Castenellos’s adoption of K.G. was invalid and does not assert that there is no
evidentiary support for the appointment of Castenellos, as a parent,  as the
sole managing conservator.

                        Because
the suit involves two parties with equal parental claims, the court was
authorized to award sole conservatorship to Castellanos, see id. §
153.005 (West 2002) (court may appoint one sole managing conservator or joint
managing conservators); to issue a standard possession order awarding Goodson
standard possession, see id. §§ 153.251(d) (standard possession order
applies to children three years of age or older), .252 (West 2002) (rebuttable
presumption exists that standard possession order is in best interests of
child), .311-.317 (standard possession order); and to require Goodson to make
child support payments and provide health insurance for K.G., see id. §
154.001 (West 2002 & Supp. 2006) (authorizing court to order either parent
or both parents to make child support payments), §§ 154.182-.183 (West 2002)
(allowing court to order parent to pay for or provide health insurance for
child).  Accordingly, we overrule these issues.

 

Evidence
Against Castellanos’s Brother

                        In
her fourth and fifth issues on appeal, Goodson argues that the district court
abused its discretion when it ruled that evidence regarding Castellanos’s
brother, Anthony Castellanos, could not be admitted.  Specifically, Goodson
argues that the district court should have admitted evidence demonstrating that
Anthony is a registered sex offender and that Anthony had contact with K.G. 
She argues that this evidence was relevant to the determination of whether
Castellanos was an effective parent.  In its temporary and final orders, the
district court prohibited Castellanos from allowing K.G. to have any contact
with Anthony.  

                        The
rules of evidence govern the admissibility of evidence.  Under rule 401,
evidence is “relevant” if it has the “tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence.”  Tex. R. Evid. 401. 
Subject to a few exceptions, relevant evidence is admissible but “may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury.”  Id. R.
402, 403.  Evidence that is not relevant is not admissible.  Id. R.
402.  

                        We
review a trial court’s decision to either admit or exclude evidence for an
abuse of discretion.  In re J.P.B., 180 S.W.3d 570, 575 (Tex. 2005).  A
trial court abuses its discretion if it acts without reference to any guiding
rules and principles or if the act complained of is arbitrary and
unreasonable.  McDaniel v. Yarbrough, 898 S.W.2d 251, 254 (Tex. 1995). 
In deciding whether evidence should be excluded, the court must weigh the
probative value of the evidence against “its potential for unfair prejudice or
confusion” and must examine the necessity and probative effect of the
evidence.  In re C.J.F., 134 S.W.3d at 356.  Because the guiding
principle in a suit affecting the parent-child relationship is the best
interest of the child, the exclusion of evidence under rule 403 should be done
“sparingly.”  In re J.W., 113 S.W.3d 605, 612 (Tex. App.—Dallas 2003,
pet. denied). 

                        In
explaining its ruling, the district court stated:

 

 class=Section7>

 

[C]onsidering the relevance and
prejudicial value, I am at this time going to rule that it has very, very
little relevance with respect to the issues the jury is going to decide.  It is
highly prejudicial.  It is the sort of thing that average citizens have a
hysterical reaction to. . . .  I do think it has a high level of prejudicial
value for virtually no relevance. 

 

 

 

 class=Section8>

                        In
the temporary orders hearing, Goodson testified that, early on in their
relationship, Castellanos informed her that Anthony was a registered sex
offender.  Further, Goodson stated that, after being informed of Anthony’s
status as a registered sex offender, she did not want Anthony to have any
access to K.G. and believed that was Castellanos’s desire as well.  However,
she testified that, a few months prior to the hearing, she learned that
Castellanos had taken K.G. to a family reunion and that Anthony had attended
the event.  Goodson also stated that when she asked Castellanos about the
visit, Castellanos replied, “Oh, don’t worry about it.  Anthony is ok now.  He
has changed.”  In addition, Goodson testified that, after the visit, K.G. began
displaying uncharacteristic behaviors that she believed were consistent with
sexual abuse.  She stated that K.G. reached for her genital area twice and
moved his face close to her genital area on more than one occasion.[8] 
Although Goodson was prohibited from discussing Anthony during trial, she did
testify that she believed that K.G. had been sexually abused.  Further, she
stated that K.G. began exhibiting symptoms she believed were consistent with
sexual abuse, including extreme mood swings, excessive crying, withdrawal,
bed-wetting, nightmares, fear of going to bed, and rashes in his genital area.[9]


                        Castellanos
also testified during the temporary orders hearing and stated that she has not
and would never let K.G. be alone with Anthony.  Further, she testified that
the only time K.G. has ever been in the same place as Anthony was during
Castellanos’s parents’ anniversary dinner.  Additionally, she stated that the
dinner was at a public restaurant, that all members of her immediate family
attended the event, that the event only lasted a couple of hours, that K.G. was
with her for the whole event, and that K.G. was never alone with Anthony.  

                        In
subsequent hearings and during bench conferences at trial,  Goodson also argued
that there was a possibility that K.G. had gone fishing with Anthony after the
temporary orders prohibiting contact with Anthony were issued.  However,
Goodson failed to present any evidence substantiating this claim.  When asked
about this possibility at trial, the amicus attorney stated that he had no
indication that K.G. had been allowed near Anthony after the temporary orders
issued.  Further, Goodson’s attorney admitted in the conference that K.G. told
the amicus attorney that he “didn’t go fishing with Uncle — with Uncle
Anthony.”  (Emphasis added).  Finally, Castellanos’s attorney argued that, when
K.G. was discussing the fishing trip with “Anthony,” he was referring to a
school friend named Anthony, not his uncle.

                        Given
Castellanos’s testimony, we cannot conclude that the district court abused its
discretion when it initially concluded that the potential for unfair prejudice
that could result from admitting the contested evidence substantially
outweighed the little probative value the evidence offered.  The only evidence
offered indicates that the family gathering occurred in a public place and was
attended by several members of Castellanos’s family and that K.G. was never
alone with Anthony.  Accordingly, the district court could reasonably conclude
that the evidence had little 

 class=Section9>

probative value
for evaluating Castellanos’s ability to act as an effective parent for K.G.  In
addition, people often have an understandably emotional reaction to the
suggestion that a registered sex offender was allowed near a child. 
Accordingly, the district court could have reasonably concluded that this
instinctual reaction may have been inappropriately primed by the mere mention
of the fact that Anthony was a registered sex offender and concluded that,
under the circumstances present in this case, admission of the evidence in
question would have unfairly prejudiced Castellanos.  In addition, given that
no evidence was proffered to substantiate the claim that K.G. had gone fishing
with Anthony and given the admission that K.G. stated he did not go fishing
with his uncle, we cannot conclude that the district court abused its
discretion when it reaffirmed its original ruling prohibiting the introduction
of evidence regarding Anthony.  

                        Moreover,
prior to trial, Goodson and Castellanos agreed to allow K.G. to undergo a
psychological evaluation by Dr. Poole.  In his report, Dr. Poole noted that,
despite being advised by Goodson that she believed K.G. had been sexually
abused, he found no evidence that any of K.G.’s behavioral problems were the
result of physical or sexual abuse.  During trial, Dr. Poole reiterated his
conclusion and stated that, despite Goodson’s concerns, he believed K.G. should
reside with Castellanos.              

                        Based
on all the preceding evidence, we cannot conclude that the district court’s
actions were without regard to guiding rules or principles.  Therefore, we
conclude that the district court did not abuse its discretion and overrule
Goodson’s fourth and fifth issues on appeal.

 

Child Support

                        In
her sixth issue on appeal, Goodson argues that the district court abused its
discretion in ordering her to pay child support because she is K.G.’s only
parent.  We have already addressed this contention and concluded that the
district court was authorized to order Goodson to pay child support. 
Therefore, we conclude that the district court did not abuse its discretion and
overrule this issue on appeal.  

                        Alternatively,
in her seventh issue, Goodson argues that there is legally and factually
insufficient evidence to support the amount of child support ordered by the
district court.  In its temporary and final orders, the district court required
Goodson to pay Castellanos $788.00 per month in child support and to provide
health insurance for K.G.  Although Goodson admits that the child support
ordered in the temporary order was consistent with her income for 2001, she
insists that the final order was improper and excessive because her annual
income was much less in 2002 than it was in 2001.

                        Courts
have the discretion to determine the appropriate amount of child support, and
we will not disturb the trial court’s conclusion unless it is shown that the
district court abused that discretion.  In re L.R.P., 98 S.W.3d 312, 313
(Tex. App.—Houston [1st Dist.] 2003, pet. dism’d).  Under this standard of
review, the factual and legal sufficiency of the evidence are not independent
grounds for appeal but are relevant considerations when determining whether the
trial court abused its discretion.  Id.; see also City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005) (evidence is legally sufficient if
it “would enable reasonable and fair-minded people to reach the verdict under
review”); Walker Ins. Servs. v. Bottle Rock Power Corp., 108 S.W.3d 538,
548 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (evidence is factually
insufficient if court’s ruling “is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and manifestly unjust”).  As long as the
court’s determination is supported by evidence of a “substantive and probative
character,” the court did not abuse its discretion.  Sanchez v. Sanchez,
915 S.W.2d 99, 102 (Tex. App.—San Antonio 1996, no writ). 

                        Goodson
argues that the amount of child support ordered is improper because her
financial situation changed between the time the court first ordered her to pay
child support in its temporary order and the court’s final judgment.  At trial,
Goodson testified concerning her income in 2001 and in 2002.  Her earnings in
2001 were over $65,000.  Based on this income, she admits that the amount of
child support originally ordered, $788.00 per month, was appropriate when the
court issued its temporary orders.  

                        However,
Goodson contends that, in 2002, she had a significantly reduced income.  At
trial, she testified that she was laid off from her job in the computer
industry and that she was unable to obtain another job in the computer
industry.  Further, she testified that her annual income in 2002 was
approximately $30,000.  Finally, she stated that, due to a downturn in the
market, it was difficult to get a job in the high-tech industry and that it was
her belief that, even if she were employed full-time, she would only make
between $30,000 and $40,000 per year.  

                        Based
on this testimony, Goodson insists that the amount of child support ordered is
impermissibly high under the family code.  In determining the proper amount of
child support, courts are to consider (1) all of the parent’s salary income;
(2) interest, dividends, and royalty income; (3) self-employment income; (4)
rental income; and (5) all other income the parent receives.  Tex. Fam. Code
Ann. § 154.062 (West 2002).  Based on her testimony regarding her actual
income, she insists that her monthly child support payment is over $350 too
high.  See Tex. Fam. Code Ann. §§  154.061 (West Supp. 2006) (chart for
calculating net monthly income after taxation), .125 (West 2002) (child support
guidelines state that, for one child, child support monthly obligation is 20%
of net resources).  Alternatively, she insists that, even if the amount awarded
was based on the amount of money she stated she could potentially earn as a
full-time employee ($40,000 a year), the amount awarded was more than $200 too
high.  See id. §§ 154.061, .125.

 class=Section10>

                        Goodson’s
arguments ignore the fact that the duty to pay child support is not limited to
the parent’s ability to pay from current earnings, and the court may consider
all sources that might be used to pay child support.  See In re S.B.C.,
952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no pet.) (it was proper for
court to consider equity person had in his home when ordering child support). 
The family code specifies that, in determining a parent’s resources, the court
may, when appropriate, “assign a reasonable amount of deemed income
attributable to assets that do not currently produce income.”  Tex. Fam. Code
Ann. § 154.068 (West 2002).  In addition, courts must also consider “whether
certain property that is not producing income can be liquidated without an
unreasonable financial sacrifice.”  Id. 

                        In
addition to testimony regarding her earnings, Goodson also testified regarding
various investments and real estate she possessed and regarding two companies
she started or planned on starting.  First, she testified that, although she
did not expect to make any money from them in 2002, she had opened a
horse-breeding company and was planning on starting her own internet company. 
Next, she stated that she had received stocks worth over $500,000 from a
previous job but further specified that she had already sold the stock, paid
taxes on the sale, used part of the money to travel to Kazakstan, and spent
$240,000 to purchase property, build a house, and set up her horse-breeding
company.  Finally, she related that she had another home, which she was going
to sell in the near future.  The court could have considered these assets, in
addition to her earnings, when it made its child support determination and
determined that the remainder of the proceeds from the sale of her stock and
deemed income from her second home or potential value from a sale of the home
supported the amount of child support awarded.  See id.

 class=Section11>

                        Finally,
it should be noted that, other than her 2001 tax return, her testimony
regarding her estimations for her income, and her assertions regarding various
purchases she made, Goodson provided little evidence regarding her financial
status.  She failed to show how much money remained from the sale of her stock,
how much money she had in savings or investments, or the amount of equity she
possessed in her second home.  Moreover, Goodson failed to demonstrate what the
value of her horse-breeding company was or what potential profits she
anticipated making in the future.  

                        Given
that evidence was introduced indicating that Goodson possessed sizeable
financial assets, the district court’s decision not to alter the child support
award from its previous determination is not unreasonable or arbitrary and is
not, therefore, an abuse of discretion.  Accordingly, we overrule Goodson’s
seventh issue on appeal.

 

Attorney’s
Fees to Amicus 

                        In
her eighth and ninth issues on appeal, Goodson argues that the district court
abused its discretion when it ordered her to pay attorney’s fees to Walsh for
legal services he provided as an amicus attorney and that there is legally and
factually insufficient evidence to support the $5,035.50 award.  In general, we
review a trial court’s decision to award attorney’s fees for an abuse of
discretion, and if a fee is awarded, we determine whether the fee is supported
by sufficient evidence.  See Allison v. Fire Ins. Exch., 98 S.W.3d 227,
262 (Tex. App.—Austin 2002, pet. abated); Hunt v. Baldwin, 68 S.W.3d
117, 135 n.8 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  

 class=Section12>

                        This
case was originally filed in 2002, and Walsh was appointed as an “amicus
attorney” in August 2003.[10] 
The relevant family code provision in effect during the time of the appointment
specified that appointed attorneys were “entitled to” reasonable attorney’s
fees.  Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 15, sec. 107.015, 1995
Tex. Gen. Laws 3888, 3894.[11] 
Because this statute stated that the attorney was entitled to attorney’s fees,
the statute was not discretionary.  See Bocquet v. Herring, 972 S.W.2d
19, 20 (Tex. 1998). 

                        Although
the award of attorney’s fees was mandatory under the previous family code
provision, the amount awarded still had to be supported by evidence.  Cf.
Manon v. Tejas Toyota, Inc., 162 S.W.3d 743, 751 (Tex. App.—Houston [14th
Dist.] 2005, no pet.) (party must prove that fees are reasonable); see also
Torrington Co. v. Stutzman, 46 S.W.3d 829, 852 (Tex. 2000) (generally,
attorney’s fees must be supported by evidence); In re R.D.Y., 51 S.W.3d
314, 325 (Tex. 

 class=Section13>

App.—Houston
[1st Dist.] 2001, pet. denied) (attorney’s fee award must be supported by
competent evidence).  The supreme court has identified eight factors that a
fact-finder may consider when determining what a reasonable amount of
attorney’s fees should be: (1) the time and labor required, the novelty and
difficulty of the questions involved, and the skill required to perform the
legal service properly; (2) the likelihood that the acceptance of the
particular employment will preclude other employment by the lawyer; (3) the fee
customarily charged in the locality for similar legal services; (4) the amount
involved and the results obtained; (5) the time limitations imposed by the
client or the circumstances; (6) the nature and length of the professional
relationship with the client; (7) the experience, reputation, and ability of
the lawyer or lawyers performing the services; and (8) whether the fee is fixed
or contingent on results obtained or uncertainty of collection before the legal
services have been rendered.  Arthur Andersen & Co. v. Perry Equip. Co.,
945 S.W.2d 812, 818 (Tex. 1997).

                        The
only evidence concerning attorney’s fees for the amicus appears in two letters
sent by Walsh to the district court.  The first letter was sent in early
February 2004.  In that letter, Walsh stated that the total amount of
attorney’s fees he was owed was $11,835.50.  He further specified that he had
already been paid $10,000 of that fee by Goodson and Castellanos, leaving a
balance of $1,835.50.  In addition, Walsh wrote that his billing rate was $250
per hour but that, in an effort to save the parties money, he was only billing
the parties $200 per hour for services performed after the jury trial began. 
Finally, the letter stated that the proposed figure was only a preliminary
estimate and did not include charges for legal services that will be performed
in the future.  Attached to the letter was an invoice specifying the various
services he had performed, the 

 class=Section14>

amount of time
spent on each service, and the corresponding charge for the service.  Later
that month, Walsh sent another letter to the court stating that his final bill
for attorney’s fees not previously paid was $5,035.50, and the district court
ordered Goodson to pay the amount requested.  No testimony was presented at
trial concerning Walsh’s attorney’s fees, and no evidence other than the two
letters summarized above was presented to the court.  Cf. Garcia v. Martinez,
988 S.W.2d 219 (Tex. 1999) (guardian ad litem testified about number of hours
worked, hourly fee, etc.); In re R.D.Y., 51 S.W.3d at 325 (court could
reasonably infer from testimony and list of attorney’s services provided that
dollar figure suggested by attorney was reasonable).  Although the original
letter provided an invoice for services rendered up to the date specified in
the letter, no similar invoice was provided concerning the services provided
from early February to the end of February explaining the increase in fees owed
from $1,835.50 to $5,035.50.  In addition, no evidence concerning any of the
eight factors listed in Andersen was provided concerning the increase in
attorney’s fees.  Further, none of the evidence provided to the district court
was given in the form of a sworn statement.  See Banda v. Garcia by Garcia,
955 S.W.2d 270, 272 (Tex. 1997) (normally, attorney’s statements must be sworn
to be considered evidence).  

                        In
light of the lack of evidence regarding attorney’s fees, we conclude that the
award of attorney’s fees was not supported by sufficient evidence. 
Accordingly, we sustain Goodson’s issue on appeal and remand the case for
further proceedings consistent with this opinion.  See In re A.M., 974
S.W.2d 857, 865 (Tex. App.—San Antonio 1998, no pet.) (although family code
specifies that attorney ad litem is entitled to fees, court remanded case for
determination of reasonable attorney’s fees: no evidence was offered supporting
attorney ad litem’s fees and ad litem’s statement 

 class=Section15>

in court about
number of hours worked was unsworn); see also Bocquet v. Herring, 972
S.W.2d 19, 21-22 (Tex. 1998) (if court finds evidence of attorney’s fees
insufficient, it may remand for further proceedings); Woollett v. Matyastik,
23 S.W.3d 48, 53 (Tex. App.—Austin 2000, pet. denied) (appellate court remanded
case because request for attorney’s fees was not supported by affidavit or
evidence).

 

Attorney’s
Fees to Castellanos

                        In
her final issue on appeal, Goodson argues that the district court abused its
discretion in ordering Goodson to pay attorney’s fees to Castellanos.  The
district court’s order stated:

 

 class=Section16>

 

 

 class=Section17>

IT IS ORDERED that good cause
exists to award [Castellanos] a judgment of $45,854.41 for legal services
through trial of this case rendered in relation to the child and in the nature
of child support, with interest at 10 percent per year compounded annually from
the date the judgment is signed until paid.

 

 

 

 class=Section18>

First, Goodson
argues that, because the Bexar County adoption decree is void, she should have
been appointed as K.G.’s sole managing conservator and, therefore, should not
have been ordered to pay attorney’s fees.  However, as discussed previously, we
have concluded that the Bexar County adoption is not void and that the district
court was authorized to appoint Castellanos as the sole managing conservator.

                        Alternatively,
Goodson asserts that there is no statutory authority allowing a court to award
attorney’s fees “in the nature of child support.”  See Finley v. May,
154 S.W.3d 196, 199 (Tex. App.—Austin 2004, no pet.) (concluding that trial
court erred in awarding attorney’s fees “in the 

 class=Section19>

nature of child
support” and modifying judgment accordingly); see also Travelers Indem. Co.
v. Mayfield, 923 S.W.2d 590, 593 (Tex. 1996) (attorney’s fees may not be
recovered from opposing party unless recovery is provided for by statute or by
contract between parties).  Finally, Goodson argues that the district court
abused its discretion when it ordered postjudgment interest of 10 % per year. 
Specifically, she asserts that the finance code required a postjudgment rate of
5 %.  See Tex. Fin. Code Ann. §§ 304.003 (specifying post judgment
interest rate), .004 (West 2006) (specifying that postjudgment interest rate
will be published in Texas Register).  

                        However,
to make these claims on appeal, Goodson was required to present these
complaints to the trial court.  See Tex. R. App. P. 33.1 (preserving
error); see also Wohlfahrt v. Holloway, 172 S.W.3d 630, 639 (Tex.
App.—Houston [14th Dist.] 2005, pet. denied) (error regarding postjudgment
interest is waived if not complained of at trial level); Harlingen
Irrigation Dist. Cameron County No. 1 v. Caprock Communications Corp., 49
S.W.3d 520, 534 (Tex. App.—Corpus Christi 2001, pet. denied) (error regarding
attorney’s fees is waived if not presented to trial court).  After reviewing
the record, we can find no motion or objection regarding the manner in which
the attorney’s fees were awarded or regarding the postjudgment interest figure
used.  Accordingly, we conclude that Goodson failed to preserve this complaint
for appeal and overrule this issue.

 

CONCLUSION

                        Because
we have concluded that (1) the adoption decree is not void, (2) the time to
attack the decree has passed, (3) Goodson was not entitled to a parental presumption
over Castellanos, (4) the district court did not improperly violate Goodson’s
right to the care of her child by appointing a nonparent as the sole managing
conservator of K.G., (5) the district court did not abuse its discretion by
excluding evidence concerning Castellanos’s brother or by ordering Goodson to
pay child support, (6) the district court did not err in the amount of child
support ordered, and (7) Goodson failed to preserve her complaint concerning
the manner in which the attorney’s fees were ordered or the amount of
postjudgment interest ordered, we affirm the portion of the district court’s
judgment appointing Castellanos as sole managing conservator and Goodson as
possessory conservator and requiring Goodson to pay child support and attorney’s
fees to Castellanos.  However, because we concluded that the amount of
attorney’s fees ordered to be paid to the amicus attorney was not supported by
sufficient evidence, we reverse and remand this case for further proceedings
consistent with this opinion.  

 

                                                                                                                                                             
                                                                             David
Puryear, Justice

 

Before Chief
Justice Law and Justices Patterson and Puryear

Affirmed in
Part; Reversed and Remanded in Part

Filed:   January
19, 2007









[1] Prior to trial, both
parties filed complaints with Child Protective Services alleging that K.G. had
been abused while in the other party’s custody.





[2] In 2003, section 162.001
was amended.  See Act of May 21, 2003, 78th Leg., R.S., ch. 493, § 1,
sec. 162.001, 2003 Tex. Gen. Laws 1764, 1764.  The current version of
subsection 162.001(b)(3) allows an individual who is not the former stepparent
of the child to adopt if the individual is the managing conservator or has had
“actual care, possession, and control of the child” for a prescribed period of
time.  Tex. Fam. Code Ann. § 162.001 (West Supp. 2006). 





[3] In support of her claims,
Goodson also refers to an attorney general opinion written in 1939.  See Op.
Tex. Att’y Gen. No. 0-532 (1939).  The opinion specified that the statutes in
effect at the time the opinion was written only allowed a child to be adopted
by a single person or by a married couple.  Id.  Further, the opinion
stated that the law prohibited “joint” adoptions by two people unless the two people
were a husband and a wife.  Id.  Finally, the letter stated that the
adoption of a child by two single women was illegal.  Id.

 

            Goodson’s
reliance on this opinion is misplaced.  First, attorney general opinions,
although persuasive, are not binding authority.  See Commissioners Court v.
Agan, 940 S.W.2d 77, 82 (Tex. 1997); see also Bradley v. Swearingen,
525 S.W.2d 280, 282 (Tex. Civ. App.—Eastland 1975, no writ) (disagreeing with
different attorney general opinion).  Second, the law relating to the adoption
of children described in the letter is no longer in effect.  Finally, the
current provision of the family code authorizing who may adopt a child is
broader than the 1939 statute and does not limit the people who may adopt a
child to only single individuals and married couples.  See Tex. Fam.
Code Ann. § 162.001 (West Supp. 2006).





[4] There is no dispute that
the district court had personal jurisdiction over the parties in this suit. 





[5] Under the prior version
of section 162.012, parties were allowed to challenge an adoption decree two
years after the order was entered.  See Act of May 25, 1973, 63rd Leg.,
R.S., ch. 543, § 1, sec. 16.012, 1973 Tex. Gen. Laws 1411, 1431.  In 1997, the
time to contest an adoption was reduced to six months.  The bill analysis
accompanying the amendment specifies that the purpose of the amendment was to
narrow the time period in which an adoption may be contested.  See Senate
Comm. on Jurisprudence, Bill Analysis, S.B. 52 (1997); see also Act of
May 28, 1997, 75th Leg., R.S., ch. 601, § 1, sec. 162.012, 1997 Tex. Gen. Laws
2118, 2118 (amendment). 





[6] In describing this public
policy, the district court commented:

 

There are valid
reasons for adoptions to be unassailable after a six-month period.  The
thousands of adoptive parents throughout Texas are entitled to know that their
adoption is absolutely final as they go about the business of raising their
children.           





[7] In her first issue,
Goodson also contends that, because the Kazakstan adoption order was a full and
final judgment, the adoption afforded her the status of K.G.’s mother,
including all the rights and responsibilities attendant with that status, and,
therefore, Castellanos was precluded from being awarded any parental rights by
the doctrine of res judicata.  See Tex. Fam. Code Ann. § 162.023(a)
(West Supp. 2006) (adoption order issued by foreign country is “accorded full
faith and credit by” Texas courts as long as order does not violate
“fundamental principles of human rights or the laws or public policy of this state”);
see also id. § 152.105(a) (court shall treat foreign country as if it
were state within United States), (b) (West 2002) (custody determinations made
by foreign county in substantial conformity with requirements of family code
will be recognized in Texas).

 

            However,
because we have concluded that the time for contesting the Bexar County
adoption has expired, we need not address this sub-issue.  Further, we note
that, if applicable, the proper place to have raised this defense would have
been during the Bexar County adoption proceeding.  See Tex. R. Civ. P.
94 (res judicata is affirmative defense that must be pleaded to be effective); Compass
Bank v. MFP Fin. Servs., Inc., 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005,
pet. filed) (if not pleaded, affirmative defense is waived).  The record
contains no indication that Goodson raised this defense during that proceeding,
and, indeed, both parties were represented by the same attorney and jointly
filed the petition for adoption.  

            





[8] Goodson also testified that
K.G. stopped these behaviors within a few days of her talking to him.  





[9] No medical evidence was
introduced concerning the alleged rashes, and one of K.G.’s pediatricians
testified that it is not necessarily unusual for a child to have a rash similar
to the one described by Goodson.





[10] The family
code provisions in effect at the time of the appointment authorized the court
to appoint an “ad litem attorney” but made no specific reference to an “amicus
attorney.”  See Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 15,
secs. 107.011-.012, 1995 Tex. Gen. Laws 3888, 3894.  Although not directly
mentioned in prior provisions, the family code now makes a distinction between
the two types of attorneys and allows a court to appoint either type of
attorney in a family law case.  See Tex. Fam. Code Ann. §§ 107.003-.004,
.021 (West Supp. 2006).  Under the current provisions of the family code, an
amicus attorney is defined as “an attorney appointed by the court . . . whose
role is to provide legal services necessary to assist the court in protecting a
child’s best interests rather than provide legal services to the child,” while
an attorney ad litem is defined as “an attorney who provides legal services to
a person, including a child” and owes the person the duty of undivided loyalty
and competent representation.  Id. § 107.001 (West Supp. 2006).  Both
types of attorneys are given the same representational powers and duties, see
id. § 107.003, but an attorney ad litem has additional duties, including
providing legal advice for the child and following the child’s directives, see
id. § 107.004. 





[11] The current
version of the family code mandates an award of reasonable attorney’s fees for
both attorneys ad litem and amicus attorneys.  See Tex. Fam. Code Ann.
§§ 107.015, .023 (West Supp. 2006).