Opinion issued July 26, 2007














Opinion issued
July 26, 2007








 

 

 

 

 

  

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 

 

 

NO. 01–05-00468–CV

 

 

 

MCALESTER FUEL COMPANY, Appellant

 

V.

 

SMITH INTERNATIONAL, INC., Appellee

 

 

On Appeal from the 11th District Court 

Harris County, Texas

Trial Court Cause No. 2003–64509

 

 

O P I N I O
N

          In two issues, appellant, McAlester
Fuel Company (“McAlester”),
challenges a final judgment rendered in favor of appellee, Smith International,
Inc. (“Smith”). 

          We affirm.

                                                  Factual History

          McAlester,
an oil and gas company, contacted Smith to determine whether Smith could
provide “sidetrack” drilling services on an offshore oil and gas well.  In response, Smith e-mailed price quotes for
three different drilling methods to McAlester.  These price quotes were contained in
documents attached to the e-mail.  On
each of these attached documents was the following notation: “TERMS &
CONDITIONS: The above quotation/proposal is made subject to our ‘Terms and
Conditions’ applicable to the goods and/or services referred to herein (a copy
of which is available upon request at 281-443-3370, attention Legal
Department).”  

          Following a meeting between McAlester and Smith representatives, McAlester orally retained Smith to sidetrack
through the double-string casing that sheathed the well at its deepest
point.  No written contract was signed
before the drilling began.

          Smith made two attempts at
sidetracking the well through the double-string casing without success.  During each of these attempts, the milling
tool used to drill through the double-string casing broke.  On its third attempt, Smith successfully
sidetracked the well by drilling higher up through a single string of casing.  After the sidetracking operation was
completed, Smith presented job tickets to Louis Ebrom, McAlester’s “company man,” who signed
them.  

          The front side of the job tickets
detailed the tools and services provided by Smith for the sidetracking
operation and estimated the operation’s cost. 
Above the signature line was the notation that the Smith’s goods and
services “are provided subject to the terms and conditions on the reverse side”
of the job ticket and in Smith’s “price list and/or price book.” 

          The terms and conditions on the back
side of the job tickets made clear that McAlester,
not Smith, bore the risks of the operation and would be responsible for any
damages arising from it.  Relatedly, the
terms and conditions expressly limited Smith’s liability, providing, in part,
that “SMITH SHALL IN NO EVENT BE LIABLE
FOR SPECIAL, INDIRECT, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR
CONTINGENT LIABILITIES ARISING OUT OF THIS AGREEMENT OR TO THE FAILURE OF ANY
GOODS TO OPERATE PROPERLY . . . .” 
The backside of the job ticket also contained an indemnity clause providing
that McAlester would “PROTECT,
INDEMNIFY, HOLD HARMLESS AND DEFEND SMITH FROM AND AGAINST ANY CLAIMS, DEMANDS,
LIENS, DAMAGES, CAUSES OF ACTION, JUDGMENTS, LOSSES AND LIABILITIES OF ANY
NATURE WHATSOEVER” arising from the operation.

          Smith invoiced McAlester for $298,415 relating to the
sidetracking operation.  McAlester not
only refused to pay but sent Smith a demand letter claiming that Smith owed it
“$539,511 to reimburse [McAlester] for additional expenses incurred by
McAlester as the result of the failures of the Smith tools.”

                                               Procedural History

          McAlester
sued Smith for breach of contract, negligence, negligent misrepresentation, and
violation of the Texas Deceptive Trade Practices Act (“DTPA”).  McAlester
alleged that Smith’s failed attempts to sidetrack the well had caused McAlester to incur actual
damages of $539,511.  Smith
counterclaimed, alleging breach of contract and seeking $298,415 for performing
the sidetracking operation.  As part of
its counterclaim, Smith also sought a declaratory judgment, requesting a
declaration that McAlester’s
claims were limited or barred by the terms and conditions of the parties’
agreement.  

          Smith also filed a motion for summary
judgment, asserting that McAlester’s
claims were barred as a matter of law by the terms and conditions found in the
job tickets signed by Ebrom and by the terms and conditions referenced in the
price-quotation documents attached to Smith’s e-mail proposal.  The trial court granted Smith’s motion for
summary judgment, ordering that McAlester
take nothing on its breach of contract, negligence, negligent
misrepresentation, and DTPA claims.  

          Before the trial court granted Smith’s
motion for summary judgment, McAlester
amended its petition to include a claim for fraudulent inducement.  Smith in turn filed a motion for partial
summary judgment regarding McAlester’s
fraudulent inducement claim, which the trial court denied.  

          Smith’s counterclaim for breach of
contract, and McAlester’s
fraudulent inducement claim were tried to a jury.  The jury found against McAlester on its fraudulent inducement claim
and in favor of Smith on its breach of contract counterclaim.  For the breach, the jury determined that
Smith was entitled to $298,600 in damages from McAlester. 
The jury was also asked, “Did Smith fail to comply with its warranty
that the tools used at the Well were free from defects in materials and
workmanship?”  The jury responded in the
affirmative but in the next question found that McAlester was entitled to zero dollars in
damages for Smith’s failure to comply with the warranty.  

          The trial court signed a “Final
Judgment” which provided, in relevant part, as follows:

At the conclusion of the
evidence, the Court submitted the questions of fact in the case to the
jury.  The charge of the court and the
verdict of the jury are incorporated for all purposes by reference.  Because it appears to the Court that the
verdict of the jury was in favor of Smith and against McAlester,
judgment should be rendered on the verdict in favor of Smith and against McAlester.

 

          The Court, after taking judicial notice of its file
(including its Order on Defendant’s Motion for Summary Judgment [signed
November 29, 2004] and its Order [signed March 7, 2005]) and considering the
evidence, stipulations, and jury answers, is of the opinion that McAlester
should take nothing by this suit and that Smith should recover damages from
McAlester.

 

          The Court finds and declares that,
based upon the jury’s answers and testimony and other evidence admitted at
trial (including ‘Terms and Conditions’ stated in the price book, job tickets,
and invoices), that all services rendered, equipment used, and tools run
downhole by Smith on the North Hell Bayou Prospect, S.L. 16141 #2 Sidetrack
Well were at McAlester’s sole risk and McAlester agreed to defend and hold
harmless from all losses and liabilities, causes of action, and claims in this
case relating to the sidetracking operations and to release Smith from its
claims asserted in this case. . . . 

          In the decretal portions of the judgment,
the trial court ordered that McAlester
take nothing from Smith on its claims and awarded Smith $298,600 in damages
plus attorney’s fees.  On appeal, McAlester challenges the
judgment by raising two issues. 

           Declaration
Renders Any Summary Judgment Error Harmless

          McAlester
first assails the portion of the judgment incorporating the summary judgment on
McAlester’s
breach of contract, negligence, negligent misrepresentation, and DTPA
claims.  Raising a number of sub-points, McAlester asserts that “genuine issues of disputed
material fact” existed regarding whether McAlester
had agreed to the exculpatory “terms and conditions,” which relieved Smith from
liability.  In its second issue, McAlester challenges the remainder of the judgment by
contending that the summary-judgment ruling “precluded McAlester’s claims and defenses from being
heard by the jury and resulted in a damages and attorney’s fee award that must
be reversed because Smith will not be the prevailing party after reversal.”

          In response, Smith contends that the
declaration in the trial court’s judgment that the sidetracking operation was
performed at “McAlester’s sole risk and McAlester agreed to defend and hold
harmless from all losses and liabilities, causes of action, and claims in this case
relating to the sidetracking operations and to release Smith from its claims”
rendered harmless any error committed by the trial court in granting Smith’s
motion for summary judgment.  We agree.  The Supreme Court of Texas has twice held,
under diverse circumstances, that a trial court’s erroneous decision to grant
summary judgment can be rendered harmless by subsequent events in the trial
court.  See Progressive County
 Mut. Ins. Co. v. Boyd,
177 S.W.3d 919, 921 (Tex. 2005) (concluding that any error committed by
granting summary judgment on insurance bad-faith and extra-contractual claims
was harmless because jury’s finding in subsequent proceeding negated coverage,
which was prerequisite for asserting bad-faith and extra-contractual claims); Martin v. Martin, Martin & Richards, Inc.,
989 S.W.2d 357, 359 (Tex. 1998) (holding that trial court rendered any error
arising from its failure to give notice of submission date for motion for
summary judgment harmless when it considered nonmovant’s response and reconfirmed
its prior ruling on the motion).[1]


          To merit reversal of the judgment, McAlester must show that
the trial court’s grant of the motion for partial summary judgment on its
breach of contract, negligence, negligent misrepresentation, and DTPA claims
was harmful.  See Tex.
R. App. P. 44.1(a).  This it has
not done.  The declaratory language in
the trial court’s judgment indicates that the issue of whether Smith was
shielded from liability, under the “terms and conditions” language relied on by
Smith, was fully litigated in the trial court independently of the grant of the
motion for partial summary judgment.  On
appeal, McAlester
does not successfully show the contrary. 


          McAlester
focuses its opening brief primarily on establishing that the trial court erred
in granting the motion for partial summary judgment on its breach of contract,
negligence, negligent misrepresentation, and DTPA claims.  Though its second issue globally asserts that
the remainder of the judgment must also be reversed, McAlester directed no argument specifically
at the declaratory judgment portion of the judgment in its opening brief.  Rather, the lion’s share of McAlester’s
contentions to defeat the declaratory judgment were raised in its reply brief
and go beyond merely responding to the assertions of Smith made in its
appellee’s brief.  See Tex. R. App. P. 38.3.  An issue raised for the first time in a reply
brief is ordinarily waived and need not be considered by this Court.  See
N.P. v. Methodist Hosp., 190
S.W.3d 217, 225 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); Zamarron v. Shinko Wire Co., 125 S.W.3d
132, 139 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); Lopez v. Montemayor, 131 S.W.3d 54, 61
(Tex. App.—San Antonio 2003, pet. denied); cf.
Hutchison v. Pharris, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no
pet.) (considering issue raised for first time in reply brief because appellee
“fully argued” the issue in its response brief and appellants merely
replied).  Accordingly, we address only
those contentions asserted in the reply brief that can be construed to expound
on McAlester’s
second issue presented in its opening brief or that reply to issues fully
briefed by Smith.[2]

          McAlester
argues that the trial court considered its grant of the partial summary  judgment when it declared that Smith was
protected from liability for McAlester’s
claims.  McAlester points to the language of the
judgment reciting that the trial court took judicial notice of its file,
including the order granting the motion for summary judgment.  Despite this recitation, there is no
indication that the trial court relied on its grant of the motion for summary
judgment when it determined the declaratory judgment claim.  To the contrary, the judgment provides that
the trial court  determined the
declaratory judgment claim “based upon the jury’s answers and testimony and
other evidence admitted at trial (including ‘Terms and Conditions’ stated in
the price book, job tickets, and invoices).” 
Cf. General Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc., 152 S.W.3d 733, 738 (Tex.
App.—Houston
[14th Dist.] 2004, no pet.) (reversing and remanding entirety of trial court’s
judgment, including  breach of contract
issue tried to jury, because “jury trial on breach of contract was premised on
the summary judgment that the appraisal award was binding and Spring Creek was
entitled to recover more than $1 million”).

          Acknowledging that the trial court
relied on the jury’s answers, in part, to determine the declaratory judgment
claim, McAlester
also challenges the declaratory judgment by arguing that the jury was presented
with a “one-sided case.”  McAlester contends that the case presented to the jury
presumed that McAlester
had agreed to the “terms and conditions” that limited Smith’s liability.  As support, McAlester
cites the jury question on Smith’s breach of contract counterclaim, which asked
as follows: “Did [McAlester]
fail to comply with the agreement to pay [Smith] for the sidetracking services
to be performed?”  While it shows a presumption
that an agreement existed between McAlester and Smith regarding payment of the
sidetracking services, the jury question does not show that a presumption
existed that  McAlester had agreed to the
exculpatory “terms and conditions,” which shielded Smith from liability.

          McAlester
correctly points out that “the jury did not answer issues regarding waiver and
release.”  Nevertheless, McAlester’s point is irrelevant unless it
shows that, after the evidence was presented at trial, issues of fact remained to
be decided by the jury before the trial court could determine the declaratory
judgment claim.  McAlester makes no such showing. 

          In sum, McAlester has not shown that the declaratory
judgment portion of the final judgment should be reversed.  Thus, it may be considered in determining
harm from the trial court’s grant of the partial summary judgment.  See
Progressive County
 Mut. Ins., 177 S.W.3d
at 921.  Based on this consideration, we
conclude that there is no remaining issue of material fact because the
declaratory judgment decided the same issue that was in dispute in the motion
for summary judgment proceedings.  That
is, the declaratory judgment determined that McAlester had agreed to release Smith from
the claims asserted in this case.  For
this reason, we hold that, even if the trial court improperly granted the
motion for summary judgment, the error was harmless.  See Tex. R. App. P. 44.1.

          We overrule McAlester’s first and second issues.

                                                     Conclusion

          We affirm the judgment of the trial
court.

 

 

 

 

                                                                   Laura
Carter Higley

                                                                   Justice

 

Panel consists of Justices Nuchia, Jennings, and Higley.

 

Justice Jennings, dissenting.











[1]McAlester contends that
the underlying events of Progressive
County Mutual Insurance and Martin
are factually and procedurally distinguishable from the instant case and thus
the harm analysis utilized in those cases does not apply.  However, the supreme court has not indicated
that the harm analysis applied in Progressive
County Mutual Insurance and Martin
is limited to cases factually and procedurally the same as those.  The Progressive
County Mutual Insurance court began its analysis by citing Martin for the general proposition that
a trial court’s erroneous decision to grant summary judgment can be rendered
harmless by subsequent events in the trial court.  See
Progressive County
 Mut. Ins. Co. v. Boyd,
177 S.W.3d 919, 921 (Tex.
2005).  We note that the factual and
procedural histories underlying Progressive
County Mutual Insurance and Martin were
themselves quite distinct.  The supreme
court in Progressive County Mutual
Insurance nonetheless relied on Martin.





[2]McAlester contends for
the first time in its reply brief that “a declaratory judgment is unavailable
to resolve issues already pending before a trial court in a party’s claims or
affirmative defenses.”  Even if McAlester had presented
this contention in its opening brief, it would not have succeeded.  McAlester
filed no special exceptions and made no objection in the trial court that
Smith’s declaratory judgment claim would be improper for the reason now
claimed.  If a party does not specially
except or otherwise make the trial court aware of a complaint that a
declaratory judgment action is improper prior to the trial judge signing the
judgment, the party fails to preserve that complaint for appeal.  Harlingen
Irrigation Dist. Cameron County No. 1 v. Caprock Commc’ns Corp., 49 S.W.3d
520, 534 (Tex. App.—Corpus Christi 2001, pet. denied); Gulf Ins. Co. v. Vantage Props., 858 S.W.2d 52, 55 (Tex.
App.—Houston [14th Dist.] 1993, writ denied). 
McAlester also raised for the first time in its reply brief the
contention that it did not have notice of the exculpatory language found in the
“terms and conditions,”arguing that such language was not conspicuous.  McAlester
relies on Dresser Industries, Inc. v.
Page Petroleum, Inc., 853 S.W.2d 505 (Tex. 1993) for the proposition that the
exculpatory “terms and conditions” at issue did not meet the “fair notice
requirements” discussed in Dresser. McAlester further
contends in its reply brief that, at a minimum, the exculpatory language of the
“terms and conditions” could not have served to waive its DTPA claim.  Specifically, McAlester contends that the exculpatory
language at issue does not comply with DTPA section 17.42 to constitute a valid
waiver and release of the act’s protections. 
See Tex. Bus. & Com. Code Ann. § 17.42 (Vernon 2002) (“Any
waiver by a consumer of the provisions of this subchapter is contrary to public
policy and is unenforceable and void” unless certain enumerated requirements
are satisfied).  Though both arguments
regarding the inadequacy of the exculpatory provisions were briefed in McAlester’s opening brief and in Smith’s responsive brief
in the context of challenging the trial court’s grant of the partial summary
judgment, such arguments appear with respect to the declaratory judgment only
in McAlester’s
reply brief.  Thus, we do not consider
either as a basis to reverse the declaratory judgment.